Argued January 23, affirmed March 3, rehearing denied July 14, 1914.

## GRAHAM *v.* COOS BAY R. & N. CO.

### (139 Pac. 337.)

**Trial—Statement by Counsel—Reading from Complaint.**

1. In an action against a railroad for the salary of plaintiff as its manager, the refusal to permit plaintiff, at the beginning of the trial, to read allegations of the complaint that a company holding bonds of the railroad as collateral and for sale had wrongfully taken possession of the road from plaintiff was not error, where the matter was referred to in a general way in the evidence and instructions; such wrongful taking not being necessarily an issue in the case, and the trial court having discretion to eliminate reference to former proceedings in order to confine the trial to the issues of the present case.

**Pleading—Defects and Objections—Effect.**

2. Where no motion is made to strike out irrelevant matter in a pleading, it should be disregarded at the trial.

**Pleading—Answer—Denial—Effect.**

3. A denial of an immaterial allegation raises no issue, does not preclude the person making the denial from insisting at the trial that the allegation denied is immaterial, nor prevent the trial court from excluding evidence in support thereof.

**Appeal and Error—Presenting Questions in Trial Court—Necessity for Exception.**

4. A ruling excluding evidence is not necessarily considered on appeal where no exception was saved thereto.

**Appeal and Error—Harmless Error—Exclusion of Evidence.**

5. The exclusion of plaintiff's testimony as to a conversation with a certain person was not prejudicial to plaintiff, though an opposing witness testified that no one connected with the firm of which such person was a member had notice of the matters presumably referred to in the conversation, where the plaintiff was afterward permitted to testify in substance denying the opposing witness.

**Railroads—Officers—Actions for Compensation—Question for Jury.**

6. In an action for plaintiff's salary as manager of defendant railroad, evidence *held* insufficient to require direction of a verdict for plaintiff.

> [As to right of corporate officers to compensation for their services, see note in 136 Am. St. Rep. 909.]

**Railroads—Officers—Actions for Compensation—Burden of Proof.**

7. In an action for plaintiff's salary as manager of defendant railroad, based on an alleged resolution of the board of directors which did not appear on the records of the corporation, the burden is on plaintiff to overcome the presumption that the secretary of the corporation performed the duty imposed by Section 6691, L. O. L., of entering in the record the proceedings of the directors.

**Evidence—Best and Secondary Evidence—Proceedings of Corporate Directors.**

8.   The duly authenticated record in the books of a corporation is the best evidence of the proceedings of its board of directors, in the absence of which any competent secondary evidence may be admitted to show what the act of the board was.

**Evidence—Weight—Uncontradicted Evidence.**

9.   Under Section 704, L. O. L., declaring a rebuttable presumption that a witness speaks the truth, but making the jury the exclusive judges of his credibility, the jury may disregard uncontradicted testimony when it is unsatisfactory to their minds.

**Evidence—Weight—Number of Witnesses.**

10.   Under the express provisions of Section 868, L. O. L., a jury need not find a verdict in conformity with the declarations of any number of witnesses which do not produce a conviction in their minds as against a less number, or against a presumption or other evidence that does satisfy their minds.

**Trial—Requests for Instructions—Instructions Already Given.**

11.   The refusal of an instruction that if the jury find that, if plaintiff was duly employed as general manager of defendant railroad by resolution of its board of directors, and accepted the employment, and entered upon his duties, he is entitled to recover the compensation claimed, with interest, is not error, where the court charged that, if there was a contract between plaintiff, and its terms were as alleged, the plaintiff was entitled to a verdict and all the evidence offered pertaining to the making of the agreement was admitted and fairly submitted to the jury.

**Appeal and Error—Harmless Error—Ruling Favorable to Appellant.**

12.   Where defendant contended that certain acts of plaintiff were admissions, plaintiff cannot complain of an instruction that, if there was any evidence that plaintiff had made oral admissions, the jury should view such testimony with caution, for the reason that the person testifying as to the admissions might not have recollected correctly, or might not have understood them correctly.

**Appeal and Error—Harmless Error—Prejudicial Nature in General.**

13.   Where a special finding shows that the general verdict is based entirely upon the general issue, rulings of the trial court admitting or excluding evidence as to other defenses are without prejudice and immaterial.

From Coos: LAWRENCE T. HARRIS, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

This is an action by R. A. Graham against the Coos Bay, Roseburg & Eastern Railroad & Navigation Company, a corporation, to recover the sum of

$53,552.53, with interest, for salary as manager of the defendant company. The cause was tried by the court and jury, and a verdict rendered in favor of the defendant. From a judgment entered accordingly, plaintiff appeals.

It is alleged in the amended complaint, in effect, that on or about August 7, 1894, plaintiff, Graham, was employed by the defendant railroad company as its general manager at a compensation of $10,000 per year, which was not to become due or payable until 620 of the first mortgage bonds of the company, aggregating $620,000, then held by J. D. Spreckels & Bros. Company as collateral security, and for sale on commission, should be sold by the latter. It is also alleged that he duly performed the services of general manager until the 15th day of December, 1899, but that he was prevented from rendering further services by the wrongful and unlawful acts of J. D. Spreckels & Bros. Company, in that it took forcible possession and control of the property and business of the railroad company, and ejected him therefrom, that his compensation became due him on the sale of the bonds to the Southern Pacific Company July 2, 1906, and that no payments have been made thereon.

The answer of the defendant company, after denying all the material allegations of the amended complaint, sets up for a first and separate defense, in substance, that at the first meeting of the stockholders of the defendant its board of directors and president executed a written contract with the plaintiff, of date August 19, 1890, whereby plaintiff agreed to construct a railroad from Marshfield to the City of Roseburg, Oregon, and defendant agreed to transfer to plaintiff certain subscription subsidies and guaranties owned by it to the amount of $225,000, and

also its first mortgage bonds to the amount of $25,000 per mile of said proposed road, the bonds to be secured by a first mortgage of defendant upon all its property, the same to be due in 30 years, with interest at 6 per cent; that thereafter plaintiff entered upon the construction of the railroad, and from time to time the defendant caused said bonds to be issued and delivered to plaintiff; that on August 19, 1890, and annually thereafter, until August, 1898, at each annual meeting of the board of directors of the defendant company plaintiff caused himself to be elected as general manager of the railroad company; that at the time he was first elected, when he participated as a director, the board duly adopted a resolution that all officers and agents of the defendant company should hold office at the pleasure of the board, and should receive only such compensation as should be fixed by it; that it was then and there understood and agreed between plaintiff and defendant company that, during all the time he was acting as general manager, he should serve as such without any compensation other than such profits as he might obtain by reason of his stock ownership and control of the defendant company, and by reason of the contract to construct the railroad from Marshfield to Roseburg, Oregon; that no resolution was ever passed by the board of directors, and no by-law of the corporation ever adopted, fixing any compensation to be received by the plaintiff as general manager of the defendant company, nor did the latter ever agree to pay plaintiff any compensation as such manager.

For a second defense, defendant sets up an agreement entered into between plaintiff and the J. D. Spreckels & Bros. Company, of date June 8, 1899, which agreement, and the acts and conduct of the plain-

tiff in relation thereto, defendant pleaded as an estoppel and a release in settlement of all claims between the parties to the contract, as well as between the Coos Bay, Roseburg & Eastern Railroad & Navigation Company and Graham.

For a third and further defense, the answer sets up the statute of limitations as a bar to plaintiff's claim.

The fourth defense pleads a settlement entered into between the plaintiff and the attorney for the Farmers' Loan & Trust Company for himself and the parties to that suit in the case of the Farmers' Loan & Trust Company against the Coos Bay, Roseburg & Eastern Railroad & Navigation Company, filed in the Circuit Court of the United States for the District of Oregon on the 5th day of October, 1904, and the resulting judgment of dismissal of plaintiff's petition for intervention as a bar, abandonment, and waiver of his claim for salary.

The reply, after admitting and denying certain allegations in defendant's answer, sets up, as a further reply to the second further and separate defense, that the agreement of June 8, 1899, was intended to be a mortgage only on the capital stock and bonds of the Coos Bay, Roseburg & Eastern Railroad & Navigation Company, and was not a sale thereof.

Upon the trial of the cause the court submitted special findings to be made by the jury, among which was the following:

"Q. 1. Did the plaintiff and defendant, in August, 1894, agree that plaintiff should be paid $10,000 per year for his services as general manager?"

The jury answered, "No," and rendered a general verdict in favor of defendant.

The history of the transaction relating to the plaintiff's connection with the defendant railroad company

which may be necessary in order for a proper under-
standing of the question involved is about as follows:
In 1890 the people of Coos and Douglas counties,
being interested in a plan for a railroad connection
between Marshfield and Roseburg, secured written
subsidies for the project, aggregating about $225,000.
The citizens' committee, by correspondence, induced
Graham to go to Marshfield about August 5, 1890, with
a view to engaging in the construction of the road.
After investigation, pursuant to an understanding
between him and the committee, the Coos Bay, Rose-
burg & Eastern Railroad & Navigation Company was
incorporated on August 19, 1890, with a capital stock
of $2,000,000, divided into 20,000 shares of $100 each,
of which F. W. Burnett, R. A. Graham, W. E. Baines,
T. R. Sheridan, E. G. Flanagan, and W. B. King
subscribed for one share each, and O. J. Seeley sub-
scribed for the remainder, and the said company was
thereupon organized with the above-named persons as
directors, with T. R. Sheridan, president. The sub-
sidies were turned over to the corporation. There-
upon a contract for the construction of the road from
Marshfield to Myrtle Point was entered into with
Graham, whereby he was to have as his compensation
all the subsidies, and $25,000 per mile, payable in first
mortgage bonds as each five-mile section should be
finished. By August 23, 1893, Graham completed the
road from Marshfield to Myrtle Point, a distance of
about 25 miles. This road, with the track and equip-
ment, cost about $630,000, of which amount J. D.
Spreckels & Bros. Company loaned to plaintiff
$185,000. It was expected, though not expressed in
terms, that the J. D. Spreckels & Bros. Company would
finance the construction of the road from Marshfield
to Roseburg, and it was arranged for that company

to sell the bonds. Graham continued the grading beyond Myrtle Point until late in 1894, when J. D. Spreckels & Bros. Company, on account of the difficulty in negotiating the sale of the bonds and the general stringency in the money market, required him to suspend operations until money could be procured on the sale of the bonds. It is claimed by plaintiff that when his work was suspended he announced to the J. D. Spreckels & Bros. Company, as well as to the directors of the company, that he would be compelled to take his grading outfit and go elsewhere to work, unless he should be allowed a salary during the suspension of the work, which was then supposed would be temporary only. Plaintiff asserts that at the next regular meeting of the board of directors, on or about August 20, 1894, a typewritten resolution was adopted by the affirmative vote of every member of the board, except J. W. Bennett and R. A. Graham, allowing him a salary of $10,000 a year, but payable only upon sale of the bonds by J. D. Spreckels & Bros. Company; that he continued to act as manager from that time until December 18, 1899; that J. D. Spreckels & Bros. Company continued to advance money whenever needed to meet deficits in the operation of the road until November 1, 1897, when such advances and the previous advances for the construction of the road, and for the opening and working of the Beaver Hill coal mine in connection therewith, and interest, and bonus as provided by agreement of September 3, 1892, aggregated $523,162.52, for which amount he gave his note, bearing interest at 6 per cent payable monthly, dated November 1, 1897, and with the following stipulation before his signature:

"And as collateral security for the payment of the above note, and the interest to grow due thereon, I have

deposited with the J. D. Spreckels & Bros. Company the following property, to wit: Certificate 10—10,001 shares of the capital stock of the Coos Bay, Roseburg & Eastern Railroad & Navigation Company. Bonds of the Coos Bay, Roseburg & Eastern Railroad & Navigation Company, as follows: * * Total, 620 ($1,000 bonds, giving the numbers). Deed to the following property: All of 32 blocks and 35 lots in Railroad addition to Marshfield."

About June 13, 1898, J. D. Spreckels & Bros. Company commenced an action against Graham in the Superior Court of the city and county of San Francisco upon said note, alleging that $10,463.14 only had been paid thereon, and praying for a sale of said stock and bonds to pay the note, with judgment against Graham personally for any deficiency. About the same time the Beaver Hill Coal Company, as plaintiff asserts, commenced a suit against Graham in the same court for an accounting in a large sum, pursuant to the instigation of the J. D. Spreckels & Bros. Company. After the trial of the first action was commenced, on June 8, 1899, Graham and J. D. Spreckels & Bros. Company entered into a written agreement, the introductory part of which is as follows: "This agreement, made this 8th day of June, 1899, by and between R. A. Graham, party of the first part, and J. D. Spreckels & Bros. Company, a corporation, party of the second part, witnesseth: That the parties hereto for the purpose of completely adjusting all matters of difference between themselves, and between each of them and the Beaver Hill Coal Company, a corporation, and the Coos Bay, Roseburg & Eastern Railroad & Navigation Company, a corporation, do hereby agree as follows." Then appear the following provisions, among others: (1) For the dismissal of Graham's suit against the Beaver Hill Coal Company then

pending in the Circuit Court of the United States for the District of Oregon; discharge of receiver, and return of property to said company; (2) dismissal of said suit of the Beaver Hill Coal Company against Graham in the Superior Court of the city and county of San Francisco, and a release by said company of all claims against Graham; (3) dismissal of suit of J. D. Spreckels & Bros. Company against Graham in the Circuit Court of the United States for the District of Oregon; (4) judgment in favor of J. D. Spreckels & Bros. Company in said action against Graham in the Superior Court of the city and county of San Francisco on said note for $523,162.52, with 6 per cent interest from April 1, 1898, with sale of said stock and bonds and provisions for the deficiency judgment, but "that all proceedings to enforce said judgment be stayed for the period of six months after the date of this agreement"; (5) binding the bank of California, a corporation, as trustee for both parties, "to hold the properties and written instruments hereinafter mentioned, for the purposes hereinafter set forth, and to perform the duties hereinafter prescribed"; (6) Graham to deliver to said trustee (a) all shares of capital stock not already held by J. D. Spreckels & Bros. Company, aggregating 9,999 shares, properly indorsed, (b) resignations of all directors of Coos Bay, Roseburg & Eastern Railroad & Navigation Company then in office, to take effect upon the election of the directors thereinafter named, and certain releases and written instruments; (7) J. D. Spreckels & Bros. Company to deposit with said trustee (a) the 10,001 shares of capital stock of said railroad company "heretofore pledged" to it as security for said note, properly indorsed, (b) the 620 bonds of said company also pledged to it for the same purpose, of

71 Or.—26

par value of $620,000, (c) and certain deeds, assignments, and stock of the Beaver Hill Coal Company; (14) Graham's payment at any time within six months of $550,000 to or for J. D. Spreckels & Bros. Company, to vest in him the title to all said shares of stock, bonds, real property, and judgments in absolute ownership, and require said trustee to deliver the same to Graham, with the proper deeds and documents; (16) Graham failing to pay the $550,000 within six months, "the title to all the shares of stock, bonds, real property, and judgments above mentioned shall, at the expiration of said six months, vest in and the same shall become the absolute property" of J. D. Spreckels & Bros. Company, and the trustee shall deliver to it the stock, bonds, proper deeds, and instruments; provision was therein made for reorganization of the defendant railroad company; (17) and said J. D. Spreckels & Bros. Company "shall cause" said railroad company to "execute and deliver * * a release and discharge of any and all claims and demands which it may have or claim to have" against Graham, and "all matters and things in dispute between the parties hereto, or between" Graham and Beaver Hill Coal Company and Coos Bay Railroad Company, "and all claims and demands shall be and become by virtue hereof finally and forever settled and determined." Graham failed to pay any part of the $550,000, and the trustee turned over to J. D. Spreckels & Bros. Company the stock, bonds, property, releases and documents as required by the stipulation.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Edward B. Watson* and *Mr. John F. Hall,* with an oral argument by *Mr. Watson.*

For respondent there was a brief over the names of *Mr. William D. Fenton, Mr. James E. Fenton, Mr. A. J. Sherwood, Mr. Lawrence A. Liljeqvist* and *Mr. J. E. Foulds,* with an oral argument by *Mr. William D. Fenton.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Numerous errors are assigned as reasons for a reversal of the judgment. At the commencement of the trial the court precluded counsel for plaintiff from reading that portion of the complaint relating to the wrongful and unlawful acts of J. D. Spreckels & Bros. Company in taking possession and control of the company's railroad property and business, and ejecting the plaintiff therefrom. This ruling is assigned as error. In a general way, however, this matter was referred to in the evidence and instructions to the jury, and we think sufficiently so to explain the transaction as far as the purposes of this case required. The wrongful taking of the property mentioned was not necessarily an issue in this case. As stated above, there had been several actions litigated involving matters relating to this railroad, and the trial court, in its discretion, could properly eliminate any reference to former actions in order to confine the trial to the issues in this cause: *Scripps* v. *Reilly,* 35 Mich. 371 (24 Am. Rep. 575); *Willis* v. *Forrest,* 2 Duer (N. Y.), 310, 317; *Fox* v. *Hunt,* 8 How. Pr. (N. Y.) 12.

2, 3. Where no motion is made to strike out irrelevant matter in a pleading, it should be disregarded at the trial: 20 Ency. Pl. & Pr. 108; *Neis* v. *Whitaker,* 47 Or. 517 (84 Pac. 699). A denial of an immaterial allegation raises no issue, and a party making such denial is not precluded from insisting at the trial that the allegation thus denied is immaterial, and does not prevent

the trial court from excluding evidence in support
thereof: *Allen* v. *Ruland,* 79 Conn. 405 (65 Atl. 138, 118
Am. St. Rep. 146, 8 Ann. Cas. 344) ; *Linton* v. *U. F.
Co.,* 124 N. Y. 533 (27 N. E. 406) ; *Ubart* v. *B. & O. R.
Co.,* 117 App. Div. 831 (102 N. Y. Supp. 1000) ; *Fleish-
man* v. *Meyer,* 46 Or. 267, 271 (80 Pac. 209).     The
trial court permitted the jury to consider that portion
of the complaint in which it was alleged that a sale
of the bonds was made by J. D. Spreckels & Bros.
Company to the Southern Pacific Company on July 2,
1906.

4. Plaintiff, Graham, testified in his own behalf that
about August 20, 1894, at the annual meeting of the
directors of the Coos Bay, Roseburg & Eastern Rail-
road & Navigation Company, after the stockholders'
meeting had been held, and the old board of directors
elected, there was a resolution passed by the board to
pay him a compensation at the rate of $10,000 per year
for services, to be payable after certain bonds of the
company were sold; that a typewritten resolution was
prepared by John A. Gray, attorney for the company,
and presented to the board of directors.     He stated, in
answer to the question as to when this was:

"Well, about the 20th of August, and I said I
wanted that resolution passed, after I had discussed
with each of the directors the object of the resolution,
that it was for salary of $10,000 a year, and, unless I
got a salary of $10,000 a year, I should resign from the
company, and take my grading outfit and go where
I could make some money; and this resolution was
passed, and the original copy of it handed to the secre-
tary of the company to be kept as a record of the
company."

He further stated that whether it should be written
into the pages of the book was not a subject under
consideration; that the carbon copy of the resolution

was sent to J. D. Spreckels to keep him advised; that at that meeting of the board of directors T. R. Sheridan presided, and that Messrs. E. G. Flanagan, O. J. Seeley, F. N. McLain, J. B. Hassett, and himself were the directors present; that he was not sure whether J. W. Bennett was there or not; that the resolution provided that he should have the aforesaid salary as long as he remained manager of the company, but that he should not receive any salary specially provided in the resolution until the bonds were sold, because there was no money in the treasury. To the question: "What did you do after that resolution was passed?" he answered: "I kept on managing the road, and I sent a copy of the resolution to Spreckels, and I kept on managing the railroad, and a month, or approximately within a month, after the resolution was passed Mr. A. B. Spreckels was in Marshfield." Whereupon counsel for defendant objected to any conversation between Mr. Graham and Mr. Spreckels, which objection was sustained by the court. This ruling is assigned as error. No exception was saved thereto, and the ruling is not necessarily considered: *Chicago etc. Co.* v. *Linn,* 30 Ind. App. 88 (65 N. E. 552); *Wittenberg* v. *Mollyneaux,* 60 Neb. 583 (83 N. W. 842); *Kelley* v. *Highfield,* 15 Or. 277 (14 Pac. 744); *Coos Bay Nav. Co.* v. *Endicott,* 34 Or. 573 (57 Pac. 61); *Ireland* v. *Ward,* 51 Or. 102 (93 Pac. 932); *State* v. *Goodager,* 56 Or. 198, 203 (106 Pac. 638, 108 Pac. 185).

5. There was no special inquiry as to any conversation with Mr. Spreckels, and no evidence tendered in connection therewith to indicate the materiality thereof. It is contended by counsel for plaintiff that the testimony of F. S. Samuels, a witness for defendant, to the effect that neither Spreckels & Bros. Com-

pany nor any member of it ever had any information or notice of such resolution until they got it from Graham's answer in the suit of Spreckels & Bros. Company filed August 6, 1900, rendered Graham's testimony as to a conversation with A. B. Spreckels soon after August 20, 1894, admissible. At the time this ruling was made by the trial court Samuels had not testified. We find at page 243 et seq. of the abstract that Graham gave his testimony tending to contradict that of Samuels, the excerpts of which are as follows:

"Q. There was not money enough to pay you at that time, and when those bonds were sold they were to pay you; that was the understanding?

"A. Yes, sir.

"Q. Was that understanding in writing of any kind between you and the Spreckels Company?

"A. There was not any writing, just a verbal discussion from time to time. * *

"Q. They [referring to Spreckels Company] had no reasonable knowledge by any means whatever that this salary was due you at that time?

"A. Yes, sir; we agreed to it in 1894. * *

"Q. Well, then, according to that, what, if any, reasonable way of knowing was there in the year 1899, five years after they had probably understood that you were to receive $10,000 a year? Did they have any way of knowing that this money was due?

"A. With the exception that it was orally discussed from time to time all the way through.

"Mr. Fenton: Discussed with whom?

"A. Spreckels and myself.

"Juror: Was there any settlement made between August, 1894, and June 1899, between you and the Spreckels corporation taking into consideration your salary?

"A. No."

Therefore, in any event, plaintiff's rights were **not** prejudiced.

The foundation of this case is the alleged agreement of August, 1894, between the plaintiff and the defendant that Graham was to receive a salary of $10,000 per annum for services as general manager of the defendant railroad company, with the express understanding that the salary should not be due until 620 thousand dollar bonds, then held by J. D. Spreckels & Bros. Company as collateral security, should be sold by said latter company. In order to support this allegation, plaintiff introduced evidence tending to show that on August 20, 1894, the board of directors of the defendant railroad company passed a resolution in effect the same as the alleged agreement.

In addition to the evidence of the plaintiff above referred to, T. R. Sheridan, president and one of the directors of the defendant company, testified as a witness on behalf of plaintiff that at the August meeting in 1894 a resolution was passed allowing plaintiff a salary of $10,000 per year as general manager, to be paid when the bonds were sold. He stated that his memory did not serve him as to whether or not the resolution was in typewriting; that all the directors present, except Graham, agreed to it. On cross-examination it is disclosed that Mr. Sheridan was then living at Roseburg, his business being that of a banker, that the meeting of August, 1894, was held at Marshfield, and that J. B. Hassett was secretary at the time. Upon being asked if he saw this resolution which was adopted, he answered:

"Well, it appears to me that there was a document there. * *

"Q. Have you any independent recollection now of ever seeing that resolution, outside of the testimony of Mr. Graham, which you heard on the witness-stand this morning?

"A. Well, I am in doubt as to that; but the resolution was passed.

"Q. Have you any independent recollection of the contents of that resolution, or ever having seen it?

"A. No; I have an idea of the contents, and that it was to go on record.

"Q. Usually the secretary accepts and records and keeps in his possession all those documents of that particular business?

"A. Yes, sir."

It appears that Mr. Hassett, the secretary, was out of the state, and not called as a witness. The other directors who were present at the August meeting of 1894 testified much to the same effect. On cross-examination, E. G. Flanagan testified on behalf of plaintiff as follows:

"Q. That is all the resolution did, was to fix his salary at $10,000 per annum?

"A. Yes, sir.

"Q. There was nothing else in that resolution?

"A. It stated *how* he should be paid; the railroad company did not have any money to pay a salary.

"Q. The company, of course, was going to pay; but did the resolution specify when it would be paid? State to the jury the facts about it.

"A. It specified that he was to receive a salary of $10,000 a year, and it was going to be paid when the bonds were sold.

"Q. What bonds were to be sold?

"A. The railroad company's.

"Q. What bonds were they, or did they have in mind at that time?

"A. I did not read the bond.

"Q. As I understand, they had turned over all the bonds to R. A. Graham for the construction of the road?

"A. That was my understanding.

"Q. There was only 625 of those bonds issued all told.

"A. I think so.

"Q. Graham received every one of those for the construction of the road, didn't he?

"Well, he was supposed to."

J. W. Bennett, the director who was not present at this meeting, testified that on the following day the secretary brought him a copy of the minutes of the meeting, and that the paper showed him contained some resolution, but that he would not say what resolution it was; that he read the whole thing through according to his recollection, and told the secretary to take it to Mr. Gray, the attorney of the company.

To the question:

"State as near as you can what that resolution was" —he answered:

"I cannot do that. I would not do that for anything. * *

"Q. What was it about?

"A. About the $5 per meeting that we directors were to receive, and the salary of the general manager, and the reason that was impressed upon my memory so particularly is, as I told Mr. Sheridan, that I did not know where the company was ever going to get the money to pay Mr. Graham, as we did not have income enough to pay on the bonds, much less than pay the general manager $10,000 a year; but, if he was willing to take his chances, it was none of our business."

It is conceded that the record of the meeting does not contain the resolution referred to by the plaintiff and his witnesses.

After the organization of the company on August 19, 1890, at the first meeting of the board of directors the following resolution was passed:

"All officers or agents of this company shall hold office at the pleasure of this board, and shall receive only such compensation as shall be fixed by the board."

The minutes of the meeting of the board of directors of August, 1894, recite that T. R. Sheridan, R. A. Graham, J. B. Hassett, F. N. McLain, O. J. Seeley, and E. G. Flanagan were present; that the minutes of the previous meetings of October 28, 1893, December 29, 1893, March 5, 1894, and April 3, 1894, were read and. approved. It seems that it was the practice at every annual meeting for· the board of directors to approve the minutes of all the preceding meetings held that year. It appears from these minutes that R. A. Graham was placed in nomination as general manager, and elected to that position. The following also appears:

"On motion of R. A. Graham, and seconded by O. J. Seeley, it was unanimously resolved, pursuant to the third resolution on page 27 of this record, being a resolution of the first meeting of the board of directors held August 19, 1890, that the compensation to be allowed the directors of this company shall be $5 for each director for each directors' meeting attended by him. No compensation will be allowed in case of non-attendance. No compensation other than the $5 mentioned and on the conditions mentioned shall be allowed to members of the board of directors of this company for services as a director, except as may be hereafter provided."

It is the contention of the defendant that this was the only resolution adopted by the board of directors of the defendant company at the time the plaintiff claims that the one fixing his salary at $10,000 was passed. Evidence was introduced by defendant tending to show that the account-books of the railroad company showed no credit to the plaintiff for such salary, and that no trace or record of the salary resolution could be found after Spreckels & Bros. Company

took possession of the railroad about December 15, 1899.

6. At the close of the evidence plaintiff requested the court to instruct the jury as follows:

"Plaintiff has introduced competent and sufficient evidence to prove all the material allegations of his amended complaint, with reference to his employment by defendant as general manager on or about August 7, 1894, with compensation for his services during the continuance of such employment at the rate of $10,000 per year, not to become due or payable, however, until the sale of 620 of its first mortgage bonds by J. D. Spreckels & Bros. Company, and his continuance in such employment from August 21, 1894, to December 15, 1899, and the sale of said bonds by J. D. Spreckels & Bros. Company on July 2, 1906; and no evidence to the contrary has been introduced by either party, or admitted by the court, and all these allegations of the amended complaint must be taken and deemed to be conclusively proved and established."

The court refused to give this instruction to the jury, and the plaintiff saved an exception. The plaintiff also requested the court to direct the jury to return its verdict in favor of the plaintiff for the sum of $53,178, the amount of said compensation earned by him from August 21, 1894, to December 15, 1899, with interest, and assigns error of the court in refusing so to do. Based upon the same grounds, plaintiff moved the court for a new trial. He contends that, if the testimony of any one of the witnesses in regard to the passage of the resolution was given full credit, he was entitled to a directed verdict.

There were several circumstances for the consideration of the jury which might have led them to believe that the witnesses for the plaintiff were mistaken as to the adoption of the salary resolution. It was

not necessary to believe that the evidence of these witnesses was intentionally false; but the resolution was alleged to have been passed in August, 1894, and this cause was tried in 1910, and they may have concluded that the witnesses had not remembered the matter correctly. Plaintiff, on cross-examination, testified that he was present at the meeting of the board of directors when the first resolution was passed in August, 1890. Upon being asked: ''It was moved and seconded that the officers and agents of the company shall hold office at the pleasure of the board, and shall receive only such compensation as shall be fixed by the board. I am asking you the question whether the board of directors at any meeting ever modified, altered, or changed that resolution''—he answered: ''I say I do not know. I am not familiar enough with the whole circumstance.'' Whatever Graham meant by this answer, there was certainly room for the jury to question the correctness of his statement as to the passage of the salary resolution in August, 1894, which, if passed, surely changed the first resolution adopted in August, 1890.

The evidence of Mr. J. W. Bennett is that the resolution was ''about the $5 per meeting that we directors were to receive and the salary of the general manager. * * We were to get $5 apiece, and he was to get $10,000 a year. * * '' This was significant and had a tendency to discredit the accuracy of the testimony offered by plaintiff as to the salary resolution. It showed that the jury might have believed that the witnesses confounded the resolution claimed by plaintiff with the one providing for $5 per meeting for the services of the directors. The latter, adopted August 21, 1894, appears to have been prepared with care and precision. The minutes of the directors show a

complete record of the same, while they are silent
as to the salary resolution which plaintiff claims was
adopted at that meeting. It is noticed that the wit-
ness Mr. J. W. Bennett thought that the resolution
not only fixed the salary of plaintiff at $10,000 per
year, but also placed the compensation of the directors
at $5 for each meeting. The jury no doubt considered
that there was ground for believing that, as the sec-
retary entered in the minutes that portion of the reso-
lution providing for the compensation of the directors,
he would naturally also have entered the resolution,
or that part of the same fixing the salary of plaintiff
at $10,000 a year. This was a circumstance for the
jury to consider.

Further, the evidence of the defendant tended to
show that Graham, on February 8, 1905, in a suit
then pending in the Circuit Court of the United States
for the District of Oregon, in which he was a party,
and in which he sought a decree of the court that he
should be allowed this claim, filed a disclaimer, and
allowed the suit to be dismissed; that, in the suit
of the Farmers' Loan & Trust Company against the
Railroad Company et al., Graham asked leave to in-
tervene, and in his petition for intervention filed an
answer, in which he set out his claim for salary; that
on February 5, 1905, he formally executed and filed
in that suit an express agreement and waiver of his
claim for salary, and consented to a dismissal of his
petition. It is also shown that Graham made no
mention of his claim for salary in the stipulation of
June 8, 1899, which purports to be a full settlement
between him and the railroad company, and by which
it was contemplated that, upon the failure of Gra-
ham to pay the Spreckels & Bros. Company $550,000
on or before December 8, 1899, all the property should

be turned over to Spreckels Bros. Company. It was agreed, however, in this stipulation, that Graham should retain possession of the railroad during the life of that agreement.

It was no doubt difficult for the jury to understand why the payment of plaintiff's salary should have been made to depend upon the sale of the 620 thousand dollar first mortgage bonds, as plaintiff stated that these bonds were then held by J. D. Spreckels & Bros. Company as collateral security for money advanced to him. As we understand the record, some over 25 miles of the road had been already constructed and these bonds had been turned over to Graham in part payment thereof, and were his property, subject to the claim of the Spreckels Company. The sale of these bonds would not increase the funds of the railroad company, nor enable it to pay the salary, and the jury no doubt considered this, and believed that the witnesses were mistaken as to the passage of the resolution as claimed by plaintiff. Counsel for plaintiff claim, however, that there is a reasonable inference that Spreckels & Bros. Company was to furnish money to pay plaintiff's salary. This was a matter for the jury, which they determined adversely to plaintiff.

7. Section 6691, L. O. L., is in part as follows:

"The directors, when elected and qualified at the first meeting thereafter, shall elect one of their number president, who shall preside at their meetings, and perform such other special duties as the directors may authorize, and at the same time shall appoint a secretary, whose duty it shall be to keep a fair and correct record of all the official business of the corporation. * * *"

The secretary was a statutory officer of the corporation. It was his duty to enter in the record the pro-

ceedings of the directors.    It would be presumed that,
if the resolution as to the salary had been passed, it
would have been so entered, especially in view of the
fact that a part of the resolution, or the resolution
fixing the compensation of the directors at $5 per
meeting, was so entered.    Therefore the burden of
proof was upon the plaintiff to overcome this presump-
tion by evidence sufficient to convince the jury that
the resolution claimed was in fact passed.

8. The duly authenticated record in the books of
the corporation is the best evidence, and, in the ab-
sence of such, any competent secondary evidence may
be admitted to show what the act of the board was:
*Boggs* v. *Lakeport A. P. Assn.,* 111 Cal. 354, 356 (43
Pac. 1106).    In *North River Meadow Co. v. Shrews-
bury Church,* 22 N. J. Law, 424, 428 (53 Am. Rep. 258),
the court says:

"The books and minutes of a corporation, though
not usually evidence against third persons, are compe-
tent evidence of the proceedings of the corporation.
In *Highland Turnpike Co.* v. *McKean,* 10 Johns. [N. Y.]
156, 6 Am. Dec. 324, the court say: 'The general
rule is (and it is a rule of evidence essential to public
convenience) that corporation books are evidence of
the proceedings of the corporation.' "

In *Rudd* v. *Robinson,* 126 N. Y. 113 (26 N. E. 1046,
22 Am. St. Rep. 816, 12 L. R. A. 473), the court says:

"The books of corporations for many purposes are
evidence, not only as between the corporation and
its members, and between members, but also as be-
tween the corporation or its members and strangers.
They are received in evidence generally to prove cor-
porate acts of a corporation, such as its incorporation,
its list of stockholders, its by-laws, the formal proceed-
ings of its board of directors, and its financial condi-
tion when its solvency comes in question."

See, also, 2 Machen, Modern Law of Corp., § 1120 et seq.; 3 Cook, Corp. (6 ed.), § 714, and note 3.

9. A witness is presumed to speak the truth. This presumption, however, may be overcome by the manner in which he testifies, by the character of his testimony, by evidence affecting his character or motives, or by contradictory evidence. Where the trial is by jury, they are the exclusive judges of his credibility: Section 704, L. O. L. In *Koontz* v. *Oregon R. & N. Co.*, 20 Or. 3, at page 26 (23 Pac. 820, at page 827), of the opinion, Mr. Justice LORD said:

"When a court is asked to declare a fact established as a matter of law, the evidence ought to so completely and irrefutably establish the fact as to free the mind from all doubt and hesitation. A party on whom rests the burden of proof is bound to prove each circumstance which is essential to the conclusion, and in such case proof means anything which serves to convince the mind of the truth or falsehood of the fact or proposition."

"Where men of reasonable minds might draw different conclusions from the evidence, the case is for the jury, and this is so although the evidence is uncontradicted. When facts proved without dispute require the exercise of reason and judgment, so that one reasonable mind may infer that a controlling fact exists, and another that it does not exist, there is a question of fact": 38 Cyc. 1539; *Galvin* v. *Brown,* 53 Or. 598 (101 Pac. 671).

10. Under Section 704, L. O. L., making the jury exclusive judges of the credibility of witnesses, the jury may disregard uncontradicted testimony where it is unsatisfactory to their minds. A jury is not bound to find a verdict in conformity with the declarations of any number of witnesses which do not produce a conviction in their minds as against a less number, or against a presumption or other evidence that does

satisfy their minds: Section 868, subd. 2, L. O. L. In *Peabody* v. *Oregon R. & N. Co.*, 21 Or. 121, at page 134 (26 Pac. 1053, at page 1057, 12 L. R. A. 823), of the opinion, Mr. Justice LORD said:

"This seems to indicate, as was contended, that, where a presumption arises in any case, the jury is not bound to believe the declarations of a witness, or a number of them, contradicting the presumption, but that the credibility of such witness or witnesses then becomes a question for them, and, if they are not satisfied of the truthfulness of the evidence of such witnesses, they are not bound to believe it, but may find in accordance with the presumption."

See, also, *McIntosh* v. *McNair,* 53 Or. 87 (99 Pac. 74); *Craft* v. *Northern Pac. Ry. Co.* (C. C.), 62 Fed. 736; *Brown* v. *Grossman* (Sup.), 108 N. Y. Supp. 653; *Herbert* v. *Dufur,* 23 Or. 462, 469 (32 Pac. 302); *Oregon Cas. R. R. Co.* v. *Oregon Steam Nav. Co.,* 3 Or. 178; *Bloomfield* v. *Buchanan,* 13 Or. 108, 110 (8 Pac. 912); *Huber* v. *Miller,* 41 Or. 103, 113 (68 Pac. 400).

11. In the event of the refusal of the trial court to instruct the jury to return a verdict in favor of plaintiff, counsel for same requested the court to charge the jury as follows:

"If the jury find from the evidence that the plaintiff was duly employed as general manager of the defendant by resolution of its board of directors, adopted at its annual meeting on August 21, 1894, with compensation for his services at the rate of $10,000 per year during the continuance of such employment, but not to become due or payable until the sale of said 620 first mortgage bonds by J. D. Spreckels & Bros. Company, and then and there accepted said employment on said condition, and entered upon the performance of his duties as such general manager

71 Or.—27

under said employment, and continued therein to December 15, 1899.''

Further, in effect, that, if they did not find that plaintiff's claim had been released or satisfied in accordance with some mutual agreement, they should return a verdict for plaintiff for the amount claimed, with interest. This instruction was refused by the court, and plaintiff saved an exception. He assigns such refusal as error.

The court gave this instruction in its charge to the jury, in substance, as follows:

''In other words, if you find by a preponderance of the evidence that there was a contract made between the plaintiff and defendant, and that the terms of that contract were as alleged by plaintiff in his amended complaint, then the plaintiff would be entitled to a verdict at your hands, however, of course, under the conditions contained in the instructions as the court has given them to you with respect to the question concerning the time of payment.''

All the evidence offered pertaining in any way to the making of the alleged agreement, or the passage of the salary resolution, was admitted by the trial court, and fairly submitted to the jury; and there was no error in refusing the instruction in the exact language requested by plaintiff. Taking into consideration all the circumstances and testimony in the case, we cannot say there was no evidence to support the verdict. There was no error of the trial court in refusing to instruct the jury to return a verdict for plaintiff, or in denying the motion for a new trial.

12. The trial court, over the objection and exception of plaintiff, gave the following instruction:

''If you find that there has been any evidence tending to show that the plaintiff, R. A. Graham, has made any oral admission, then you are to view such

testimony with caution, for the reason that the person testifying concerning such admissions may not have recollected correctly, or, having recollected correctly, may not have understood them correctly.''

Plaintiff assigns the giving of this instruction as error.

A contention was made by defendant upon the trial which was predicated upon the conduct of plaintiff being inconsistent with his claim in this action. Various transactions, suits, documents, releases, etc., the employment of counsel by plaintiff, and his participation in the proceedings of the board of directors, a portion of which are oral, were referred to in the evidence. Among these was a motion made by Graham for the adoption of the resolution providing for the payment of the directors. Defendant also claimed that plaintiff was silent when he should have spoken. These matters the jury might have understood as an admission on plaintiff's part. It was therefore a matter of precaution and favorable to the plaintiff for the trial court to give the jury the instructions complained of, and there was no error in so doing.

13. The other alleged errors pertain to the further and separate defenses. Plaintiff contends that the contract of June 8, 1899, was for additional security, and in effect a mortgage, and not a sale; that no sale of the bonds was made until July 2, 1906. The question as to the nature of the contract of June 8, 1899, is ably presented in the briefs of the learned counsel. It is germane to the defense of the statute of limitations in order to determine when the demand became due. As the jury decided the case upon the general issue, we will refrain from taking up that question.

The general verdict of the jury was based upon the special verdict set out above, whereby the jury found

that the plaintiff and defendant did not agree that plaintiff should be paid $10,000 per year for his services as general manager. This conclusion reached by the jury renders the other separate defenses of the defendant, and the rulings of the trial court relating thereto, unimportant. It therefore becomes unnecessary for us to examine the same. In other words, if the jury properly found that no agreement was ever made between plaintiff and defendant for the payment of a salary of $10,000 per annum to plaintiff, then it is not necessary to consider whether the claim of plaintiff therefor has been released or settled, or whether or not the statute of limitations has run against such claim.

Where a special finding of the jury shows that the general verdict is based entirely upon the general issue, and not upon issues made by other and different defenses, wherein such evidence is alleged to have been erroneously admitted or excluded, the rulings of the trial court admitting or excluding such evidence, although erroneous, are without prejudice and immaterial, and will not be considered on appeal: *British Ins. Co.* v. *Lambert,* 32 Or. 496 (52 Pac. 180); *Fowler* v. *Phoenix Ins. Co.,* 35 Or. 559 (57 Pac. 421); *Kraemer* v. *Deustermann,* 40 Minn. 469 (42 N. W. 297); *French* v. *French,* 133 Fed. 491 (66 C. C. A. 365); *Fraser* v. *Cal. St. Cable R. R. Co.,* 146 Cal. 714 (81 Pac. 29); *Parker* v. *Smith Lbr. Co.,* 70 Or. 41 (138 Pac. 1061).

Finding no prejudicial error in the record, the judgment of the lower court is affirmed.

AFFIRMED. REHEARING DENIED.

MR. JUSTICE EAKIN, MR. JUSTICE MCNARY and MR. JUSTICE RAMSEY concur.

MR. CHIEF JUSTICE MCBRIDE did not sit.