Argued October 12, 1961, affirmed January 31, 1962

# RICKARD *v.* ELLIS

368 P. 2d 396

*James W. Walton,* Corvallis, argued the cause for appellant. On the briefs were Ringo and Walton.

*Edward L. Clark, Jr.,* Salem, argued the cause for respondent. With him on the brief were Goodenough, Clark & Marsh.

Before McAllister, Chief Justice, and Warner, Sloan, O'Connell and Brand, Justices.

O'CONNELL, J.

This is an action to recover damages for personal injuries alleged to have been suffered by plaintiff in an automobile collision. The jury found that defendant was negligent but that plaintiff suffered no injuries in the collision. Plaintiff moved the court to resubmit the cause to the jury on the ground that the evidence was uncontradicted that plaintiff was injured as a result of the collision. The motion was denied. Plaintiff contends on appeal that the court erred in denying plaintiff's motion.

The collision occurred under the following circumstances. Plaintiff was a passenger in a vehicle driven by her husband. They stopped in response to a red

traffic control signal at Rickreall junction. After they had stopped they were struck from the rear by defendant's automobile. The collision resulted in minor damage to the rear of plaintiff's vehicle and the front of defendant's vehicle. Plaintiff was not thrown against the interior of the car as a result of the impact. She claims only that she received a so-called whiplash injury of the neck, resulting in muscle spasms and a stretching of certain ligaments. Much of her testimony was devoted to the character of the pain which she attributed to the accident and the various circumstances which triggered the pain. She complained of a recurring headache, soreness in her shoulder and in the back of her neck, and dizziness. She testified that prior to the accident she had been in good health. Her doctor, Dr. Drost, an osteopathic physician, testified that his examination revealed that the muscles just under plaintiff's skull were in spasm or contraction, and that the cause of the discomfort was "probably nerve damage." With respect to the cause of her condition, Dr. Drost testified on direct examination, as follows:

"Q What would induce that contraction, sir?

"A Any number of things could.

"Q In your opinion what induced it in this matter?

"A Well, I presume the accident did.

"Q But any particular matters occurring in the body that would require those muscles to spasm or become rigid?

"A Well, there are lots of things that can add to a muscle spasm, if there is an infection in the body or something like that, or she caught cold.

"Q In this instance why were the muscles in spasm, in your opinion?

"A Why were they in spasm?

"Q  Yes.

"A  As I say, I presume it was as a result of this accident according to her history."

The X-ray pictures taken of plaintiff's neck did not reveal any injury. Upon cross-examination Dr. Drost testified, as follows:

"Q  You make certain assumptions as to the cause of the condition that you observed. Those things you have no way of knowing independently of what the patient herself tells you, isn't that true?

"A  Good part of it is her history alone that you make your diagnosis on.

"Q  All right. She tells you that three weeks before she was in a motor vehicle accident. What may have intervened you have no way of knowing, if there is anything that intervened, isn't that true?

"A  That is right."

After the accident occurred plaintiff and her husband continued on the journey previously planned by them, which included a conference with a cabinetmaker in Hillsboro, thence to Portland to pick up plans from an architect and to visit with plaintiff's sister. Plaintiff testified that she did not begin to feel any serious discomfort until the next morning when she got up. Her husband testified that she did not complain to him of any injuries until "a day or so after" the accident. The morning after the accident he talked to defendant. Defendant testified that Mr. Rickard said, "Well, no one was hurt and very little minor damage done," and that defendant "shouldn't even worry about it."

Plaintiff did not seek medical aid until two weeks after the accident. Dr. DiIaconi, called by defendant, testified that he examined plaintiff about six months after the accident and found a slight tenderness in the

lower portion of the back of her neck; that there were no muscle spasms in the neck or shoulder, and that there was some restriction of rotation in her neck. He admitted that plaintiff could have had such spasms at an earlier period. He stated that in his opinion Mrs. Rickard "had very minimal residuals of an injury." On cross-examination he stated that the tenderness described would "probably" indicate "nerve damage" rather than muscular damage. Dr. DiIaconi also testified on cross-examination, as follows:

"Q  So now if a person didn't have any tenderness before a wreck and it commenced about March 11, '59, and continued up to now, would it be your medical thought that that came from the wreck?

"A  Yes, I would say it did."

The foregoing is a fair summary of the testimony which is relevant to plaintiff's contention on appeal, the contention being that the evidence shows that plaintiff suffered injuries and that the injuries were received in a collision which was caused by defendant's negligent conduct. Plaintiff argues that there is no evidence to contradict the testimony in this respect and that, therefore, the jury would not be permitted to disregard the undisputed testimony that plaintiff received injuries in the accident. Plaintiff further contends that defendant was bound by the testimony of Dr. DiIaconi to the effect that plaintiff had suffered an injury and that it was the result of the accident.

It is defendant's position that the evidence was conflicting on the question of whether plaintiff was injured in the accident on March 11, 1959, and that it was the exclusive province of the jury to resolve that question of fact.

There is considerable confusion in the adjudicated cases on the question of the respective functions of the court and jury where the testimony in support of an issue of fact is wholly uncontradicted. In some of the cases it is stated without qualification that the jury must accept the uncontradicted testimony of a party or his witnesses. At the other extreme is the occasional judicial pronouncement that the credibility of a witness is always for the jury.[1]

■ Neither of these is a correct statement of the rule relating to the effect of uncontradicted testimony. In some cases an issue upon which there is uncontradicted testimony is properly submitted to the jury; on the other hand in some cases the question of the credibility of a witness is properly withheld from the jury. The correct principle is stated in *Ferdinand v. Agricultural Insurance Co.*, 22 NJ 482, 126 A2d 323, 62 ALR2d 1179 (1956), which was adopted and applied in *Wiebe v. Seely, Administrator*, 215 Or 331, 343-344, 335 P2d 379 (1958):

" '* * * Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury. * * * [Citing cases]. But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinary intelligent mind, then a question has been presented for the court to decide and not the jury. * * * [Citing cases].' "

---

[1] See, Annotation, 62 ALR2d 1191 (1958). We have summarized the Oregon cases in note 5 infra.

■■ It is evident from the foregoing statement of the principle that whether uncontradicted testimony is such as to preclude the jury's function in testing the credibility of the witness or witnesses who gave it will depend upon the nature of the issue in the particular case which the testimony purports to resolve. Two important factors in determining whether the jury should be permitted to disbelieve the witness and draw an inference contrary to the uncontradicted testimony given are (1) the availability of evidence to contradict the witness's statement, and (2) the likelihood that the witness's interest in the litigation may tempt him to testify falsely.[2]

These two factors are of particular significance in the case at bar. The resolution of two issues of fact were crucial to the determination of defendant's liability; (1) whether plaintiff suffered an injury, and (2) assuming that she did, whether the injury was caused by the defendant's negligence. With respect to the first issue it is to be noted that there was no visible injury. Proof that there was injury rests for the most part upon plaintiff's assertion that she suffered pain. If this were the only evidence of injury then it would be clear that the question should be left to the jury to determine the credibility of the witness, for reasons which we shall develop later. There was, however, non-subjective evidence of injury. Plaintiff's doctor testified that there were muscle spasms and probable nerve damage in plaintiff's neck. These

---

[2] For other factors see Brizius, "Directed Verdicts on Uncontradicted Testimony," Trial Lawyers Guide, p. 65 (1959); Bobbe, The Uncontradicted Testimony of an Interested Witness, 20 Cornell L Q 33 (1934); Note, The Power of the Court to Determine Witness Credibility: A Problem in Directing a Verdict for the Proponent of the Evidence, 107 U Pa L Rev 217 (1958); Annotation, 62 ALR2d 1191 (1958); Annotation, 8 ALR 796 (1920).

muscle spasms were palpable. The medical testimony in this respect was uncontradicted. We shall assume, without deciding, that the jury would be required to accept this latter uncontradicted testimony.

There remains, however, the question of whether the injury was the result of the accident. Plaintiff asserts that it was; defendant contends that the injury may have resulted from some other cause. The opportunity to disprove causation in a case of this nature is very limited because ordinarily there is no available evidence to contradict the plaintiff's assertion. It would be error to permit the jury to disbelieve plaintiff and to draw an inference that her injury resulted from a cause other than the accident unless there was a reasonable basis for the inference. This does not mean that there must be evidence of another specific cause; it is enough if the jury had reason to conclude that the accident was not the cause. We believe that there was a reasonable basis for such an inference.

Plaintiff testified that it was not until the day following the accident that she suffered headaches and soreness in her shoulder and neck. The accident did not interfere with the activities which she had planned to carry out on March 11, 1959, the day of the accident. She did not seek medical aid until two weeks after the accident. It would not be unreasonable for the jury to infer from this conduct of the plaintiff that she received no injury as a result of the collision.

The inference would not be unreasonable in spite of the fact that the seriousness of an injury such as that which plaintiff claims to have suffered sometimes does not become apparent immediately . "An inference is a deduction which the reason of the jury makes from the facts proved * * *." (ORS 41.320). The

process of deduction necessarily brings into play matters of common knowledge, or as it is sometimes put, "data founded upon common experience,"[9] and it is this knowledge and understanding which the jury employs to measure the reasonableness of a particular conclusion based upon certain facts.

In employing that measure in the instant case it is quite possible that the jury considered, among other things, the fact that damage claims for back and neck injuries are frequently made by malingerers, or that persons who have an interest in the outcome of litigation (including medical witnesses) frequently exaggerate the seriousness of an injury and occasionally fabricate one where none exists.

Plaintiff argues in effect that because there was evidence of muscle spasms in her neck the jury was required to believe her testimony that the muscle spasms were caused by the accident. And in this process, according to plaintiff's argument, apparently the jury would be required to believe that plaintiff was telling the truth even though plaintiff's demeanor in the court room was such that the jury would be warranted in concluding that she was a malingerer.

■ We believe that this is precisely the type of situation in which the jury's function in testing the credibility of witnesses has its greatest justification, i.e., where an essential fact in issue is ascertainable only through the testimony of a claimant. We hold, therefore, that the trial court did not err in denying plaintiff's motion to resubmit the matter to the jury for further consideration.

■ The applicability of the rule requiring the jury

[9] Barnes v. J. C. Penney Co., 190 Wash 633, 644, 70 P2d 311, 316 (1937).

to accept uncontradicted testimony depends upon the issue and the evidence in each case.[4] Therefore, it is of little or no value to analyze in detail our previous cases involving this question. These cases are summarized in the margin.[5]

The judgment is affirmed.

---

[4] In Ford v. Schall, 114 Or 688, 236 P 745 (1925) in an action on a note defendant set up as a defense the statute of limitations. Plaintiff testified that interest payments were made within the statutory period. The testimony was uncontradicted. It was held that a directed verdict for the plaintiff was proper. Here the court recognized that "[e]ach case must be read in the light of the facts before the court for decision." It was deemed important to point out that "cases cited involving negligence are not in point." (114 Or at p. 691). The court recognized the qualification on the rule applied: "The evidence may be undisputed, but it is a question for the jury if, as stated in Koontz v. Oregon R. & N. Co., 20 Or 21 (23 Pac 820), and cited with approval in Graham v. Coos Bay R. & N. Co., 71 Or 393 (139 Pac 337), men of reasonable minds might draw different conclusions from the facts proved." (114 Or at p. 690).

[5] Occasionally our cases state without qualification that when there is no conflict in the evidence there is nothing to submit to the jury. Montana Coal & Iron Co. v. Hoskins, 88 Or 523, 172 P 118 (1918); Coffin v. Hutchinson, 22 Or 554, 30 P 424 (1892). And in a few cases it is said that the question of the credibility of a witness is always for the jury. White v. East Side Mill Co., 84 Or 224, 161 P 969, 164 P 736 (1917); Graham v. Coos Bay R. & N. Co., 71 Or 393, 139 P 337 (1914). As we have already indicated, neither of these statements accurately expresses the rule. In most of the Oregon cases, however, the applicable rule is not stated in absolute form. Thus it is frequently said that the jury need not accept uncontradicted testimony if conflicting inferences may be drawn from it. State v. Cummings, 205 Or 500, 288 P2d 1036, 289 P2d 1083 (1955); Farley v. Portland Gas & Coke Co., 203 Or 635, 280 P2d 384 (1955); Larkins v. Utah Copper Co., 169 Or 499, 127 P2d 354 (1942); Krause v. Bell Potato Chip Co., 149 Or 388, 39 P2d 363 (1935); Kohanek v. Rudie Wilhelm Warehouse Co., 129 Or 642, 276 P 693 (1929); Saylor v. Enterprise Electric Co., 110 Or 231, 222 P 304, 223 P 725 (1924); Clarke-Woodward Drug Co. v. Hot Lake Sanatorium Co., 75 Or 234, 146 P 135 (1915); Connell v. McLoughlin, 28 Or 230, 42 P 218 (1895); Hedin v. Suburban Railway Co., 26 Or 155, 37 P 540 (1894). Other or additional qualifications are sometimes stated. Inwall v. Transpacific Lumber Co., 165 Or 560, 108 P2d 522 (1941) (evi-

dence not discredited, which does not discredit itself, and from which no conflicting inferences can be drawn presents no jury question); Fleishhacker v. Portland News Publishing Co., 158 Or 476, 77 P2d 141 (1938) (jury question if testimony is improbable or unworthy of belief because of its nature or character); Miller v. Service and Sales, Inc., 149 Or 11, 38 P2d 995, 96 ALR 628 (1934) (jury not bound to believe evidence clouded with uncertainty and improbability); Rivers Bros. v. C. F. T. Co., Inc., 124 Or 157, 264 P 368 (1928) (jury not bound to accept unreasonable or improbable testimony); Edwards v. Mt. Hood Const. Co., 64 Or 308, 130 P 49 (1913) (reasonable and probable testimony of unimpeached witnesses must be accepted); Taffe v. Oregon R. & N. Co., 60 Or 177, 117 P 989 (1911) (jury not necessarily bound to accept uncontradicted testimony); Chenoweth v. Southern Pac. Co., 53 Or 111, 99 P 86 (1909) (same); Miller's Will, 49 Or 452, 90 P 1002 (1907) (testimony of a disinterested witness, which is not in itself improbable, must be believed); Herbert v. Dufur, 23 Or 462, 32 P 302 (1893) (if no conflicting inferences may be drawn, or if the witnesses are interested or inconsistent in their statements, a jury question is presented).