Argued September 9, affirmed by divided court November 24, 1971

BRANNAN, *Respondent, v.* SLEMP ET AL,
*Appellants.*

490 P2d 979

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellants. With him on the briefs were Souther, Spaulding, Kinsey, Williamson & Schwabe, and Gordon Moore, Portland.

*James T. Fitting,* Beaverton, argued the cause and filed the brief for respondent.

Before O'CONNELL, Chief Justice, and MCALLISTER, DENECKE, HOLMAN, HOWELL, and BRYSON, Justices.

HOWELL, J.

This is an action for personal injuries arising out of an accident when defendant Slemp's car rear-ended plaintiff's taxicab in downtown Portland. The jury returned a verdict awarding plaintiff $5,553 special damages and no general damages. After further instructions by the court on damages, the jury then returned a verdict for $22,000 general damages, and $5,553 special damages. The trial court denied defendants' motion to accept the first verdict and also denied defendants' motion for a new trial, and defendants appeal.

The defendants present eight assignments of error, many of which pertain to the manner in which the court conducted the trial.

The accident occurred on January 7, 1969, when plaintiff was stopped in his cab preparatory to making a left-hand turn. Defendant Slemp, unfamiliar with the street, was attempting to change lanes and collided with the rear of plaintiff's cab.

Plaintiff testified that he had previously sustained a whiplash injury to his neck while working in Alaska. His doctor testified that he diagnosed plaintiff's injuries from the January 7 accident in Portland as a "strain to the muscles and ligaments of the neck with occipital type headache, which is a headache that comes from muscle spasm in the neck and squeezing of the nerve that comes up over the scalp." A cervical collar and physical therapy were prescribed. The doctor stated that the aching of the neck muscles and the headache would "come and go" in the

future. Approximately seven months after the January, 1969, accident in Portland, plaintiff suffered another whiplash, in August, for which he received $2,600 in settlement. The doctor testified that the August accident resulted in only "a temporary intensification of symptoms" of the previous accident and "then it simmered down to about the same as it had been before." He stated that the medical charge of $550 was actually for the first accident, regardless of the second one in August, because the plaintiff was still under treatment for the first accident and the treatment was the same.

Based on the earnings of plaintiff's cab for two months in 1968, plaintiff's accountant testified that plaintiff lost earnings amounting to $480 per month for 1969.

The court instructed the jury that plaintiff's special damages for lost earnings could not exceed $5,003, and the medical expenses could not exceed $550.

The jury returned a verdict for $5,553 special damages only. The court reporter was not present when the jury returned the verdict. The trial judge called counsel, and advised counsel that he had told the jury the verdict was improper and had asked them to return to the jury room and not to deliberate further. Plaintiff moved for a mistrial; the court asked defendants' counsel if he wanted to join in the motion. Counsel replied in the negative but requested the court to submit to the jury a general form of verdict without segregating general and special damages. The court refused and advised counsel he was going to reinstruct the jury. The court then gave the jury substantially the same instructions on damages as he had in his original instructions. The defendants excepted to the

additional instructions on damages and contended that the instructions should have been restricted to advising the jury that they could not find special damages without first finding general damages.[1] Defendants also moved the court to accept the first verdict.

Shortly thereafter the jury returned a nine-to-three verdict for $22,000 general damages, and $5,553 special damages.

■ The defendants argue that the court erred in instructing the jury in the absence of counsel and a court reporter after the jury returned its first verdict. Counsel had previously stipulated that the court could receive the verdict in their absence. Obviously the court could not have known that the verdict was for special damages only when the verdict was returned. Thereafter, the court told the jury to return to the jury room but to discontinue any further deliberations, and summoned counsel. This does not constitute instructions to the jury in the normal sense. The defendants are correct that a court reporter should have been present when the verdict was returned, but the defendants' claim of prejudice is purely conjectural.

The defendants also contend that the court should not have reiterated all the previous damage instructions, and that the error was compounded by the

---

[1] The defendants' exception stated:

"\* \* \* I would object to the rest of the instruction as to predisposition, full and fair compensation, and the instruction about taking into consideration physical and mental pain and anguish, things like that. I don't believe they were necessary here. I think all the Court should have instructed the jury was that they cannot return special damages without returning first general damages, and I think that was an adequate explanation to the jury. But I have a feeling, it seems to me like the instructions admonished the jury they hadn't taken into consideration certain things. I object to the rest of those instructions for that reason."

tone of voice and the mannerisms of the court when it instructed the second time.

It is not practicable for us, as an appellate court, to suggest the substance or extent of instructions the trial court should give a jury when the verdict is contrary to the court's instructions on damages. In the proper case it could be argued that the court should restrict the instructions merely to advising the jury that they cannot award special damages without awarding general damages. On the other hand, additional instructions on general and special damages might be of assistance to the jury. The trial judge is on the scene and is entitled to use his discretion. We cannot say that there was an abuse of discretion in this case.

■ Also, as an appellate court, we are in no position to determine from the transcript the type of gestures and the tone of voice used by the trial court in its additional instructions on damages. A tone of voice and a gesture may mean one thing to one person and something entirely different to another. In any event, the defendants did not object nor give any indication to the court at the time that they felt prejudiced by the mannerisms of the court. This assignment of error is without merit.

The defendants argue that the trial court erred in submitting to the jury plaintiff's medical expenses in the amount of $550. Defendants contend that plaintiff failed to segregate the medical expenses between the accident in the instant case and the subsequent one occurring in August, 1969.

■ Plaintiff's doctor testified that plaintiff's present condition was caused by the first accident in January. He also stated that the August, 1969, accident merely created a "temporary intensification" of plaintiff's previous symptoms and that $550 represented

the total medical expenses "even though there was something else in between because the treatment was the same." The court instructed the jury that plaintiff had the burden of proving the nature and extent of his special damages and that plaintiff was not entitled to any damages not proximately caused by the accident. Under the circumstances we do not believe that the court erred in submitting the entire medical expenses to the jury for consideration.

The defendants also contend that the trial court erred in submitting to the jury any claim for lost income in excess of $3,260.

■ The court instructed the jury that an award for special damages for lost earnings could not exceed the sum of $5,003. This sum was based on an average monthly income of $480 for the 12 months of 1969 less $753 of net income received by plaintiff as a supervisor for the taxicab company. The defendants did not move to strike the claim for lost earnings on the basis of failure of proof or that the damages were too speculative; defendants claimed only that the $480 per month lost earnings should be restricted to seven months, or the time between this accident and plaintiff's second accident in August, 1969.[2] Defendants took no exception to the trial court's instructions on damages. Whether plaintiff was entitled to lost earnings after the August accident was a question for the jury. This assignment is also without merit.

■ The defendants assign as error the refusal of the trial court to receive and enter the first verdict

[2] Defendants miscalculated the lost income for seven months, which would amount to $3,360 instead of $3,260. Plaintiff also made a slight miscalculation in his claim for lost income. The total lost income for 12 months at $480 per month would amount to $5,760 with a net loss of $5,007 after deducting $753 received by plaintiff as supervisor.

for special damages only. In support of this assignment the defendants urge us to adopt the dissenting opinion of O'CONNELL, J., in *Flansberg v. Paulson,* 239 Or 610, 399 P2d 356 (1965), to the effect that a jury should be permitted to award a plaintiff damages equivalent only to his medical expenses and loss of earnings without an award for "general" damages. The majority of this court, however, adhered to the rule that a verdict for special damages without an allowance for general damages was improper.

Subsequent to *Flansberg* this court decided *Saum v. Bonar,* 258 Or 532, 484 P2d 294 (1971). There, the plaintiff was also involved in a "rear-end" accident, and alleged injuries to his neck and back. Prior to trial the defendant had paid plaintiff $3,050 for alleged lost wages. Plaintiff's doctors diagnosed his injuries as a sprain of the muscles. Defendant's answer denied that plaintiff suffered any general damages, and defendant's examining doctor testified that he found no muscle spasms or other indications of any pain and suffering. The jury returned a verdict of $1 general damages and $4,443.33 special damages less the amount defendant had previously paid plaintiff for his lost wages. The trial court, believing that the verdict was improper, granted a new trial.

This court, in an opinion by TONGUE, J., reversed the order granting a new trial and ordered the reinstatement of the verdict. The court pointed out that the issue of general damages was contested by the defendant in his pleading and in the evidence, and that the jury could have concluded that plaintiff had not suffered any substantial injuries or that he had already been compensated by the defendant's payments. The court also pointed out that if the record disclosed that the plaintiff had suffered a serious injury, a verdict

for special damages without general damages would be improper.

The instant case is distinguishable from *Saum*. While the facts present a close question, we believe that the first verdict for special damages only was improper in this case, and that the court correctly refused to receive it. The evidence disclosed that plaintiff sustained an injury from the accident and that he sustained some pain and suffering. The plaintiff's doctor testified as follows:

"Q In summary, would you say that his condition is somewhat permanent, that he will have some problems?

"A I think he will because he has had intensive treatment and he does have something in the neck which would be more evident on subsequent x-rays over a long period of time, but primarily, I think his continuing complaint will be one of headache and aching in the neck when he becomes fatigued, and relieved by rest, but subject to recurrence."

The plaintiff's medical testimony was not contested by the defendants who did not call their examining doctor. Consequently, this case is unlike *Saum* where the evidence as to whether plaintiff sustained injuries was strongly controverted by other evidence including the medical testimony.

We have examined the other assignments of error relating to the admissibility of certain evidence and instructions of the court and find they are without merit.

We readily appreciate defendants' dissatisfaction with the amounts of the two verdicts, but we do not believe that the record discloses any reversible error.

Affirmed by divided court.

O'CONNELL, C. J., dissenting.

In *Saum v. Bonar,* 258 Or 532, 484 P2d 294 (1971), the court went part way in adopting the reasoning of the dissent in *Flansberg v. Paulson,* 239 Or 610, 399 P2d 356 (1965). I think that the court should now take the final step and permit the jury to return a verdict of special damages even though plaintiff has not shown that he incurred so-called "general damages." I would reverse and reinstate the original verdict.

McALLISTER, J., dissenting.

This case is an example of the confusion resulting from the vacillating rule adopted in *Saum v. Bonar,* 258 Or 532, 484 P2d 294 (1971). In my view the trial court should have the right to supervise and control a recalcitrant jury and, for that reason, I would return to the rule adopted in *Flansberg v. Paulson,* 239 Or 610, 399 P2d 356 (1965).

I believe, however, that in this case the trial court committed prejudicial error in virtually directing the jury to return a verdict for general damages. After the first, improper, verdict was returned the trial court reinstructed the jury on all of the elements of damages. The instructions were emphasized by the frequent repetition of the words "I told you," "I instructed you," and the like. After the instructions on the elements of general damages, the court said:

> "Then I instructed you, after taking into consideration all of these matters, you shall fully and fairly compensate him for general damages. I stated that the law does not provide you with any yardstick, but states that the damages shall be reasonable compensation.
>
> "I told you further, that before you could award any special damages, that you must award him general damages, * * *."

The instructions on special damages followed. The court then concluded:

"Do you understand me at this time? Do any of you have any reluctance to follow the instructions of this Court?"

Defendants' counsel excepted to the form of these instructions and later moved the court to either reject the second verdict or to set it aside and grant a new trial on that ground:

"* * * because I think the Court has gone way beyond any necessity the Court would have had in reinstructing. In fact, it amounted to an exhortation to the jury to return a verdict for general damages for the plaintiff which, of course, the jury, by its reactions, certainly did in wholesale fashion. * * *"

Although I agree with the majority that it is within the discretion of the trial judge to repeat all the damage instructions rather than to simply inform the jury that there can be no special damages unless general damages are allowed, the emphatic language of the trial court went beyond a repeating of the instructions. Under the circumstances, the instruction that "you shall fully and fairly compensate him for general damages," together with the inquiry whether the jury had "any reluctance to follow the instructions of this Court" apparently conveyed to the jury the idea that they *must* award substantial general damages.

In my opinion, defendants' exception to the reinstruction was well taken and there was error entitling defendants to a new trial. I would reverse and remand.

BRYSON, J., concurs in this dissent.