Argued October 30, reversed in part and remanded
December 14, 1972

CHOPP, *Appellant, v.* MILLER, *Respondent.*
504 P2d 106

*F. P. Stager*, Salem, argued·the cause for appellant. With him on the briefs was A. C. Goodrich, Bend.

*Ronald L. Marceau*, Bend, argued the cause for respondent. With him on the brief were O. M. Panner, and McKay, Panner, Johnson, Marceau & Karnopp, Bend.

HOLMAN, J.

Plaintiff brought this action for damages resulting from injuries allegedly incurred in an automobile accident. She appealed from a judgment for defendant entered pursuant to a jury verdict.

Plaintiff's vehicle was hit from the rear while she was stopped, or virtually so, and was driven by the impact into the vehicle ahead of her. The damage to the vehicles was not great. She claims a cervical strain, causing pain in her neck and between her

shoulder blades, headaches, and numbness in her left arm. Defendant admits he was at fault, but he denies plaintiff was injured.

The first issue upon appeal is plaintiff's contention that the trial court erred in failing to submit to the jury as an item of special damages a bill for $1,334.70 for medical services rendered by a chiropractic physician who was a treating doctor and who testified as the only medical witness at the trial. He treated plaintiff from the day after the accident, May 2, 1969, to November of 1970, and again in October 1971 at a time shortly before trial. Plaintiff received other services from medical doctors but these expenses were paid by defendant's insurer.

■ The trial judge ruled that there was no evidence from which the jury could infer that the injuries for which the doctor said he treated plaintiff resulted from the accident or that the treatment was necessary. The trial judge was in error. Plaintiff testified she was injured in the accident on May 1, 1969. The doctor testified as follows:

"Q   Can you refer to your records, or by your memory, tell us when you first started to treat her and for what?

"A   As I recall, May 2nd, early May, 1969, for the result of a whiplash or cervical injury from a car accident.

"*   *   *   *   *.

"Q   And what did these various tests and examinations disclose to you on this series of exams?

"A   At the time the examination showed that the patient suffered from a cervical sprain injury, which is commonly termed a whiplash injury. The

neck was very sore, the muscles were rigid. She could hardly lift her head or turn it to either side."

\* \* \* \* \* \* \* \*

"Q   And what is the total of the charges you have made?

"A   My total charges are $1,344.70.

"\* \* \* \* \* .

"Q   And are all these charges in your—are they reasonable charges for this type of service?

"A   Yes. There [sic] are in direct accordance with the recommended fee schedule for the state."

He testified he treated her continuously for the strain for a year and a half. There is some question whether plaintiff's complaints when she came back to see the doctor in October of 1971 were related to the strain. However, the charges for the treatment at that time were shown to have been $236 and were therefore segregable. It is our opinion that the testimony given by the doctor upon an offer of proof was sufficient to show that plaintiff's condition in October of 1971 was related to her allegations of a cervical strain, but the trial court kept out the testimony of the October 1971 complaints on the basis that they were not pleaded. Plaintiff, however, assigns no error because of this exclusion.

■■ The manner in which testimony is given does not have to follow any exact form. It is not a ritual where the magic words have to be uttered. The doctor clearly stated that he treated her for a cervical strain resulting from an auto accident. He even described how the accident occurred, as recited to him by the plaintiff. The plaintiff told an identical story of how the accident occurred, thus showing that the accident of which she complained and the one for which the doctor treated her were the same. It is true that the doctor

did not testify in so many words that his treatment was necessary. However, he testified to the extent of plaintiff's injuries, their cause, his treatment for these injuries, and the manner in which she responded. The jury could infer from this that, in the doctor's opinion, the treatment was necessary. He did not have to utter the magic words.

■■ The trial court was also disturbed because buried someplace in the total bill was an unidentified amount, which could not have been large, for making medical reports for plaintiff's lawyer, which reports were also furnished to defendant's lawyer. It seems to us that in this day and age a medical report to an attorney or to an insurance company concerning a patient's condition is a necessity which is occasioned by the accident. Only the treating doctor can prepare such a report. It is part of the medical service rendered and is, therefore, a recoverable expense. The doctor bill should have been submitted to the jury as an item of special damage.

■ Plaintiff also contends that the trial court erred because it submitted a defendant's verdict to the jury and allowed it to return such a verdict. She argues that the evidence of injury is uncontradicted, that the liability for the happening of the accident is admitted, and that she is entitled, as a matter of law, to a verdict for general damages. The case of *Rickard v. Ellis*, 230 Or 46, 368 P2d 396 (1962), lays plaintiff's contention at rest. It holds that two of the most important factors in determining whether a jury is allowed to disbelieve a witness and to draw inferences contrary to uncontradicted testimony are 1) the availability of evidence to contradict the witness's testimony, and 2) the likelihood that the witness's interest in the out-

come of the case may cause him to testify falsely or to exaggerate. *Also see Coleman v. Meyer,* 261 Or 129, 136, 493 P2d 48 (1972); *Bezoff v. Crater Lake Motors, Inc.,* 259 Or 449, 452, 486 P2d 1274 (1971); *Grubb v. Boston Old Colony Ins.,* 257 Or 208, 212-13, 477 P2d 901 (1970); *Schmitz v. Yant,* 242 Or 308, 317-18, 409 P2d 346 (1965). *Rickard* was a claimed cervical strain case such as the present one and we held that the jury could disbelieve plaintiff and her doctor. Plaintiff's interest in the outcome of the present litigation is clear and her complaints were largely subjective. In addition, she had consulted four medical doctors, none of whom were called by plaintiff to testify. Although she was regularly employed, she lost no wages. The jury was properly permitted to find that she suffered no damage.

Plaintiff contends that defendant, in his argument to the jury, admitted plaintiff was injured. The arguments to the jury are not part of the transcript so we cannot determine whether there is any basis for plaintiff's contention.

It is also claimed that because defendant's insurance company, at defendant's request, paid the bills of the medical doctors whom plaintiff consulted, an admission of injury was made which is determinative of the question. There is certainly evidence from which the jury could infer that defendant and his insurer thought plaintiff was injured, but it is not conclusive of the question.

Plaintiff cites *Hall v. Cornett et al,* 193 Or 634, 240 P2d 231 (1952), and argues that some damage is always presumed to follow from a violation of any right or duty imposed by law and, therefore, it must be presumed that damage to plaintiff resulted from an accident caused by defendant's fault. When applied to

the present situation, *Hall* does not support plaintiff's contention. As a matter of fact, it holds that negligent contact with the person of another must result in physical damage to such other person before it is actionable.

In conclusion, plaintiff contends her ability to secure a verdict for general damages was prejudiced by the erroneous exclusion from the jury's consideration of the treating physician's medical bill. She argues that the jury inferred from such exclusion that medical treatment was not necessary and that she therefore was not injured. The jury was told, in effect, not to draw any inference from the withdrawal of special damages from its consideration. We have to assume that the jury followed the court's instruction in the absence of a reason to assume otherwise.

■ Prior to our decision in *Saum v. Bonar*, 258 Or 532, 484 P2d 294 (1971), we would have held that since the jury found no general damages, there could be no special damages, and we would have affirmed the judgment despite the error of withholding the special damages from the jury. In *Saum* we held that in circumstances similar to this case medical expenses could be recovered even when the injuries were not sufficiently extensive to merit a finding of general damages. As a result, plaintiff is entitled to a new trial on the issue of her right to recover her medical expenses.

The judgment of the trial court is reversed in part, and the case is remanded for a new trial on the issue of medical expenses only.

McALLISTER, J., dissenting.

I dissent for the reasons stated in my dissent in *Saum v. Bonar*, 258 Or 532, 484 P2d 294 (1971).