EISELE, *Appellant,*
*v.*
ROOD, *Respondent.*

551 P2d 441

*George T. Gant,* of McNutt, Gant & Ormsbee, Coos Bay, argued the cause and filed a brief for appellant.

*Samuel G. Wilson,* Eugene, argued the cause for respondent. With him on the brief were Darst B. Atherly, and Thwing, Atherly & Butler, Eugene.

Before O'Connell,* Chief Justice, and McAllister, Denecke** and Howell, Justices.

HOWELL, J.

---

*Chief Justice when case was argued.
**Chief Justice when case was decided.

## HOWELL, J.

Plaintiff filed this action for personal injuries which he allegedly received when defendant's auto rear-ended plaintiff's vehicle at a stop light. The jury returned a verdict for plaintiff and awarded approximately $1,200 special damages but no general damages. Plaintiff appeals, contending that the court erred in accepting a verdict awarding special damages and no general damages. Plaintiff also appeals the trial court's failure to poll the jury.

At the trial, liability was not seriously controverted, but there was conflicting testimony as to whether plaintiff actually suffered a substantial injury and incurred any general damages. Plaintiff and plaintiff's chiropractor testified that plaintiff suffered neck pain, headaches, pain in his left shoulder, and numbness and weakness in his left arm as a result of the accident. There was also evidence that as a result of these symptoms plaintiff missed several weeks of work and eventually quit when he was told that if he didn't want to work he would be fired. Plaintiff testified that he quit because he was in too much pain and was a potential hazard to his co-workers. Four months after the accident plaintiff stole a generator and was convicted of burglary and first degree theft.

The only medical doctor who testified examined plaintiff at the request of defendant's attorney. His examination revealed that plaintiff's arm trouble was due to a mechanical irritation of the elbow, had been present for many years and was unrelated to the accident. Plaintiff's neck problems were found to be due to chronic cervical strain, that is, a long-term, pre-existing symptom primarily due to muscle soreness. His headaches were also apparently related to the muscle soreness in his neck, as were his shoulder aches. The doctor also indicated that plaintiff seemed to suffer from chronic tension:

"By this I mean an individual who tends to be fairly

tense a good share of the time, and it is important in this problem, because these individuals develop a lot of muscular pain, tenderness, *et cetera.* * * * [H]e is the kind of person that might have musculo-skeletal type pains and aches off and on all of his life."

The doctor concluded his diagnosis by stating that in his opinion "there was no objective evidence of any problem that would be directly related to [the accident]."

The record also indicates that plaintiff had apparently suffered several similar injuries previously and had been treated for them. However, at trial plaintiff claimed that at least one of these episodes was fictional; that he had faked the injury in order to get an early discharge from the Navy. This incident occurred approximately three months prior to the accident in question and involved an extended hospital confinement.

In summary, the record discloses that plaintiff's symptoms were primarily subjective. Moreover, there was medical testimony from which the jury could have concluded that those symptoms for which there was some objective manifestation were due to unrelated problems. Plaintiff's own testimony is punctuated by periods of forgetfulness and inconsistencies. Even more significant is his own admission that he had previously faked a similar injury and had undergone extensive medical treatment in order to dupe the Navy into letting him out early. Under these circumstances, the jury could have rationally concluded that plaintiff was grossly exaggerating the extent of his injuries and that, on balance, the medical testimony did not demonstrate that plaintiff suffered any substantial injuries as a result of the accident. However, the jury could also have concluded that plaintiff did incur some reasonable expenses for diagnosis and treatment and had a legitimate loss of wages for at least a portion of the period he was out of work. Under our past decisions, such a conclusion was legally permissible, and

the jury's verdict awarding special damages was not improper.

Since our decision in *Saum v. Bonar,* 258 Or 532, 484 P2d 294 (1971), a majority of this court has held that if, under the pleadings and the evidence in a particular case, the jury could consistently find that the plaintiff suffered special damages but no general damages, then a verdict for special damages alone was proper. The facts in *Saum* were similar to the facts in our present case: the plaintiff was involved in a rear-end collision, complained of neck pain, and had previous injuries. Since his complaints were largely subjective and his credibility was subject to question, we concluded that:

> "Under such a record it can be understood why a jury might, and perhaps with good reason, find that plaintiff had lied about his alleged injuries and that he * * * suffered no substantial injuries for which he was entitled to any substantial award or compensation for general damages for pain and suffering. * * * At the same time, it can be understood why a jury might still award him special damages representing unpaid doctor and medical bills." 258 Or at 536.

However, in the next case which arose on somewhat similar facts, we reached a different conclusion. *See Brannan v. Slemp,* 260 Or 336, 490 P2d 979 (1971). This case also involved a rear-end collision, and there was evidence that the plaintiff suffered neck muscle strain, soreness in the neck and headaches. These symptoms were primarily subjective, and the jury's initial verdict awarded only special damages. An equally divided court affirmed the trial court's actions in refusing to accept this verdict and in reinstructing the jury that in order to award special damages they were required to award general damages as well. In doing so, we distinguished *Saum* as follows:

> "The plaintiff's medical testimony was not contested by the defendants who did not call their examining doctor. Consequently, this case is unlike *Saum* where the evidence as to whether plaintiff sustained injuries was

strongly controverted by other evidence including the medical testimony." 260 Or at 344.

*Moore v. Drennan,* 269 Or 189, 523 P2d 1250 (1974), was another similar rear-end collision case in which the plaintiff allegedly suffered neck and shoulder strain or sprain and resultant pain and suffering. These symptoms were again largely subjective, and plaintiff's credibility was attacked. Plaintiff alleged that other, more serious injuries also resulted from the accident, but there was conflicting evidence as to whether these more serious injuries were caused by the accident. The jury again awarded special damages but no general damages. Since in *Moore* there was a direct conflict in the evidence as to whether plaintiff actually suffered any substantial injuries as a result of the accident, this court followed the rule of *Saum* and distinguished *Brannan.*

Finally, in *Beranek v. Mulcare,* 269 Or 324, 524 P2d 1214 (1974), we were again faced with a similar problem. The plaintiff was riding a motorcycle which was struck from the rear by defendant's automobile. Defendant's answer admitted "some" injury to plaintiff but denied that the injury was as extensive as plaintiff alleged. At trial, the extent and permanency of some of plaintiff's injuries were seriously disputed. However, as we noted, there was other objective evidence of general damages which was uncontested:

> "* * * [T]here was uncontroverted evidence that plaintiff was hospitalized for five days with his leg elevated and that he was in some pain at that time. There was also evidence that he was at home in bed with his leg elevated for three weeks and that he would have some permanent scars on his leg. This is evidence of general damages." 269 Or at 326.

Under such circumstances, we held that the rule of *Saum* was inapplicable, and we reversed the judgment which was entered on a jury verdict which awarded only special damages.

■ When the above cases are considered together, it can be seen that they stand for the following propositions: As a general rule, a verdict for special damages without an allowance for general damages is improper. However, when the issue of general damages is controverted in the pleadings and the evidence on that point is in conflict, the jury may conclude that plaintiff did not actually suffer any general damages but did reasonably incur special damages for medical expenses and/or loss of wages. In cases in which plaintiff's evidence of injury is merely subjective in nature, the jury may choose to disbelieve plaintiff's testimony as well as any medical testimony which is based on plaintiff's subjective complaints and for which there is no independent, objective evidence.[1] Similarly, if there is objective evidence of a substantial injury, but defendant's evidence indicates that this injury was not caused by the accident for which he is responsible, the jury can again find that plaintiff has not proved general damages. However, if there is uncontroverted, objective evidence that plaintiff sustained general damages as a result of the defendant's conduct, an award of special damages alone is improper.[2]

We believe that the facts in the present case fall within the rule of *Saum v. Bonar, supra.* As we noted previously, this plaintiff's complaints were largely subjective in nature and his credibility was seriously in question. The jury was entitled to conclude that he

---

[1] As we indicated in *Chopp v. Miller,* 264 Or 138, 504 P2d 106 (1972), two of the more important factors in determining whether a jury may properly choose to disbelieve a witness's testimony are:

"1) the availability of evidence to contradict the witness's testimony, and 2) the likelihood that the witness's interest in the outcome of the case may cause him to testify falsely or to exaggerate." 264 Or at 142-43, *citing Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962).

[2] It should be obvious that in a case in which the plaintiff, as a result of defendant's conduct, has clearly suffered a severe and permanent injury, such as the loss of an eye or the loss of a limb, a verdict awarding only special damages would be improper. It is only logical that the same rule should be applied when the injury suffered is less serious and merely temporary, so long as there is some uncontroverted, objective evidence of the injury.

greatly exaggerated the extent of his injuries. The testimony of plaintiff's chiropractor was based primarily upon plaintiff's subjective complaints, and those symptoms which were objectively manifested were diagnosed as unrelated to the accident in question by the only medical doctor who testified. Under these circumstances, the jury could well have concluded that plaintiff did not suffer any substantial injury as a result of the collision and, therefore, was not entitled to an award of damages for pain and suffering.

Plaintiff also assigns as error the court's failure to poll the jury.

ORS 17.355 states, in part:

"(2) When a verdict is given, and before it is filed, *the jury may be polled on the request of either party,* for which purpose each shall be asked whether it is his verdict; if a less number of jurors answer in the affirmative than the number required to render a verdict, the jury shall be sent out for further deliberation. If the verdict is informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be again sent out." (Emphasis added.)

■  Thus, in civil cases, each party has the privilege of requesting a poll and, under our past decisions, an absolute right to a poll if they request it. *See, e.g., Freeman v. Wentworth & Irwin, Inc.,* 139 Or 1, 7 P2d 796 (1932). However, each party may waive his right to have the jury polled. *See, e.g., Rodgers Ins. v. Andersen Machinery,* 211 Or 459, 316 P2d 497 (1957).

■  Plaintiff did not request the court to poll the jury. However, plaintiff argues that, since the court had previously indicated that it would poll the jury on its own motion, this relieved him of the necessity of requesting a poll. We disagree. When the verdict was returned and received without a poll being taken, plaintiff objected to the verdict on the same grounds that he urged in his first assignment of error. The trial court, in ruling on this objection, apparently forgot to poll the jury as it had indicated it would. Plaintiff also

apparently forgot to request a poll of the jury and did not bring the oversight to the court's attention. Nor did plaintiff raise the matter in his motion for a new trial. Under these circumstances, we believe that plaintiff, by his silence, waived his right to request a poll of the jury.

Affirmed.

**O'CONNELL, J.,** specially concurring.

In a dissenting opinion in *Flansberg v. Paulson,* 239 Or 610, 618, 399 P2d 356 (1965), I urged that the rule invalidating a verdict assessing only special damages be repudiated. Some but not all of what was said in that dissent was accepted in *Saum v. Bonar,* 258 Or 532, 484 P2d 294 (1971) and as a result this court fashioned a new rule which recognized the validity of a verdict allowing only special damages in some cases but not in others.

The majority opinion in the present case traces the sad story of confusion which has ensued in an effort to follow the *Saum* rule. The refinements and fine distinctions made in these cases remind one of the ancient discourses on the number of angels that could dance on the point of a needle. This effort might be applauded if it were for a profitable end, but this is not the case. The entire exercise is deemed necessary by the court simply because it starts with an erroneous premise that, for some reason or other, the jury should not be permitted to measure plaintiff's right to recover for his entire loss by assessing only the amount of the so-called special damages. I have set out at length in my dissent in *Flansberg v. Paulson, supra,* my reasons for permitting the jury to make such an award. I should have added there that the common inclination of juries to award special damages only (as demonstrated by the many cases in which they have done so) might well have been prompted by an effort to adjust the measure of recovery to the comparative fault of the parties (without finding plaintiff contributorily negli-

gent and therefore completely barred under the old rule).

Having failed in my effort to convince the court of the advisability of repudiating the rule adopted in *Saum v. Bonar, supra,* I urge the legislature to enact a statute which will do so.

Denecke, C. J., concurs in this opinion.