# STOREY, *Appellant,*
## *v.*
# MADSEN et ux, *Respondents.*

554 P2d 500

*James M. Habberstad* of Dick & Dick, The Dalles, argued the cause and filed briefs for appellant.

*Kenneth M. Abraham* of Parker, Abraham & Bell, Hood River, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and McAllister, O'Connell, Holman,* Tongue and Bryson, Justices.

O'CONNELL, J.

---

*Holman, J., did not participate in this decision.

## O'CONNELL, J.

This is an action to recover damages for physical injuries sustained by plaintiff when she slipped and fell in a parking lot maintained by defendants as a part of their grocery store. The jury returned a verdict for plaintiff, awarding her $2500 general damages and $123.07 special damages. Plaintiff moved for a new trial on the grounds that certain requested instructions should have been given and that the jury improperly allocated the amounts for general and special damages. The motion for a new trial was denied and plaintiff appeals.

Plaintiff slipped on the icy surface of defendants' parking lot. As a result of the fall she suffered a broken pelvis, a bruised hip, and an aggravation of an existing arthritic condition. Plaintiff was hospitalized for 43 days, with a substantial part of the time in traction. The evidence, if believed, would establish plaintiff suffered severe pain as a result of the fall.

Counsel for plaintiff and defendants entered into a stipulation that the hospital and medical costs in the amount of $2,461.33 were reasonable and would be taken as the amount of special damages if shown to have been incurred by plaintiff.[1]

---

[1]The following colloquy occurred:

"MR. ABRAHAM: Counsel, I am quite willing to stipulate they are reasonable and I would expect Mrs. Storey to testify that she incurred them, just that they were incurred. I don't require any testimony from any doctor that it was reasonable, but I expect her to make the record, that was my understanding.

"MR. DICK: I just thought we would avoid those entirely.

"MR. ABRAHAM: I think she has to testify she incurred these. I don't argue they weren't reasonable, which is the preliminary thing, you would have a doctor or somebody else testify to that.

"THE COURT: I would assume, Mr. Abraham, after there has been some testimony that medical expenses were incurred that you would then stipulate the amounts are reasonable and disclaim liability. I will expect you to be prepared to make the stipulation so there is no quarreling over the wording of it.

"MR. ABRAHAM: We won't have any problem over it. I want her to relate it so it would be in the record."

■ Plaintiff testified without contradiction that she incurred the expenses. There was no cause other than the accident for plaintiff to make these expenditures. Therefore, in light of the stipulation and the jury finding that defendants are liable for plaintiff's injury, the expenses must be accepted for the purpose of the disposition of this case as the measure of special damages.

When the jury returned its first verdict, it awarded plaintiff $2,461.33 special damages and no general damages. The trial court, noting that the evidence revealed that plaintiff must have suffered pain as a result of the broken pelvis, applied the rule in *Beranek v. Mulcare,* 269 Or 324, 524 P2d 1214 (1974), and rejected the verdict.[2] The jury was sent out again and after some deliberation presented the following question to the trial judge: "What is the minimum amount of general damage compensation necessary to allow our original award for full special damages?" The trial judge explained to the jury that he could not be very specific about answering the question because of the danger of invading the province of the jury. He did explain, however, that "[o]ur Supreme Court has said that a token or nominal award of general damages, something in the nature of an award for $1.00 is a nominal award, a token award will not support a verdict for special damages."

The jury again retired and then returned a verdict awarding plaintiff $2500 general damages and $123.07 special damages.[3] After the trial judge announced the verdict, he said: "I will allow counsel to take any legal questions up later after the jury is

---

[2] *Beranek v. Mulcare, supra,* held that if there is evidence showing general damages, the jury must return a verdict awarding such damages in some amount.

[3] There is nothing in the record to explain how the jury arrived at this result. We note, however, that $123.07 is 5% of $2,461.33, the amount of the special damages, and that $2,500, awarded as general damages, is 5% of $50,000, the amount prayed for in plaintiff's complaint.

[ 184 ]

discharged without waiving any of your rights at this time." Plaintiff's counsel did not make any objection to the verdict at that time; it was not until he filed a motion for a new trial giving as his reason, among others, the following:

"1. Irregularity and/or misconduct in the proceedings of the jury which prevented Plaintiff from having a fair trial, as follows:

"a. The jury stubbornly adhered to an invalid verdict when it merely transferred to general damages, a portion of the amount originally awarded as special damages in a verdict found unacceptable by the Court which had awarded the full amount of special damages prayed for in plaintiff's complaint, but no general damages."

Defendants contend that plaintiff waived her right to attack the verdict by not making objection before the jury was discharged. Defendants rely upon our previous cases in which we have held that an objection must be taken before the jury is discharged, thus giving the trial judge an opportunity to reinstruct the jury if he finds the objection well taken.[4] The reasoning in these cases cannot be applied to the present case because the trial judge invited counsel to postpone their objections without waiver of their right to object until after the jury was discharged. Ideally, plaintiff's counsel probably should have pointed out to the trial court that an objection made after the discharge of the jury would render it impossible to reinstruct. But realistically, we think that it is too much to expect of counsel during the fast moving events which attend the conclusion of a trial to carefully consider what objections he might make when the trial judge, in effect, invites him to postpone, until after the jury is discharged, his consideration of the choice of tactics he might make. We hold, therefore, that plaintiff did not waive her objection to the verdict.

The question is, then, whether the verdict is fatally

---

[4] *Smith v. J. C. Penney Co.,* 269 Or 643, 652-55, 525 P2d 1299 (1974) and cases cited therein.

defective. We begin with the established fact that the special damages were $2,461.33. The jury awarded only $123.07, an amount patently inadequate to reimburse the plaintiff for an uncontroverted loss.[5] It is true that uncontradicted evidence will not always require an award of special damages in the proven amount.[6] However, where the reasonableness of the damages is stipulated and causation is not in issue, the jury cannot arbitrarily set an amount in the verdict not supported by any theory of the evidence.[7] Our previous decisions have established the general princi-

[5] As we have indicated above, the jury appears to have reached its conclusion by taking five percent of the amount of $50,000 damages requested in plaintiff's complaint and five percent of the amount of special damages incurred. This could have been prompted by comparing plaintiff's and defendants' negligence and concluding that defendants were five percent more negligent than plaintiff. This would mean that the jury concluded that defendants were 52.5 percent negligent and plaintiff 47.5 percent negligent, because no other percentages would leave a difference of five percent. Carrying this inference on to its logical conclusion, the application of the 52.5 percent to the uncontroverted special damages claim should yield $1,394.20 in special damages. Likewise, application of the same percentages to the entire general damages claim would equal $26,250. If the jury actually arrived at the 52.5/47.5 percent figures, the verdict returned would be wrong because the comparative negligence doctrine does not contemplate a computation of damages by taking the difference between plaintiff's and defendant's negligence and using that difference as a multiplier. Consequently, it is patent from the record that the jury misapplied the comparative negligence principle. This is an error of sufficient consequence to warrant our taking cognizance of it on appeal without its having been called to the trial court's attention. *Cf., Weber v. Kamyr, Inc.,* 269 Or 617, 525 P2d 1307, 1315 (1974).

We have no direct evidence of the jury's decision as to the comparative fault of the parties because, although the record contains a form entitled "Special Findings of Fact on Verdict" calling for findings on the percentage of negligence of each of the parties, it was not filled out. The jury exercised the option given it by the judge of using a general verdict form that merely indicated the amount of special and general damages assessed against defendants.

[6] *See, Chopp v. Miller,* 264 Or 138, 504 P2d 106 (1972) and *Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962).

[7] *See, McIntosh Livestock Co. v. Buffington,* 108 Or 358, 217 P 635 (1923); *Tou Velle v. Farm Bureau Co-op. Exchange,* 112 Or 476, 229 P 83, 1103 (1924). Inadequate verdicts oftentimes reflect a jury compromise on the issue of liability. *See generally, Pescatore v. Bryan,* 206 Cal App2d 293, 24 Cal Rptr 15 (1962); *Kitagawa v. Williams,* 168 Cal App2d 123, 335 P2d 509 (1959); *Harrell v. Bishop,* 160 Fla 3, 33 So2d 152 (1948); *Fortier v.*

ple that undisputed proof of general damages necessitates a jury verdict compensating such a loss.[8] The same rule applies, in this case, to special damages. For this reason, the judgment must be reversed and the cause remanded for a new trial. Plaintiff's other assignments of error are without merit.

Reversed and remanded.

**McALLISTER, J.,** specially concurring.

In my opinion the conduct of the jury in this case was similar to the conduct of the jury in *Flansberg v. Paulson,* 239 Or 610, 399 P2d 356 (1965). Since the majority opinion is based on the misconduct of the jury in this case in stubbornly refusing to follow the court's instructions, I concur in the result.

**DENECKE, C. J.,** dissenting.

In *Beranek v. Mulcare,* 269 Or 324, 327, 524 P2d 1214 (1974), I finally became convinced that adhering to the rule that special damages could not be awarded unless general damages were also awarded was poor policy. Mr. Chief Justice O'Connell stated the reasons for that belief in his dissent in *Flansberg v. Paulson,* 239 Or 610, 618, 399 P2d 356 (1965).

Our constant, continual occupation with this problem, in my opinion, fortifies this position. In July we decided *Eisele v. Rood,* 275 Or 461, 551 P2d 441 (1976), which had this same problem. This month we heard arguments in *Kriner v. Weaver* involving the same problem. Our desire for efficient judicial administration should dissuade us from spending inordinate

---

*Newman,* 248 Minn 69, 78 NW2d 382, 385 (1956); *Miller v. Emerson,* 120 Mont 380, 186 P2d 220 (1947); *Cohen v. City Canal Corp.,* 279 App Div 897, 111 NYS2d 157 (1952); *Seliger v. Pepple,* 306 SW2d 165 (Tex Civ App 1957); *Kerr v. Rollins,* 128 Vt 507, 266 A2d 804, 806 (1970); and James, "Remedies for Excessiveness or Inadequacy of Verdicts", 1 Duquesne U L Rev 143 (1963).

[8] *See, Flansberg v. Paulson,* 239 Or 610, 399 P2d 356 (1965).

amounts of time attempting to force upon juries a distinction which has no basis "in the nature of things." *Flansberg v. Paulson, supra* (239 Or at 619).