Argued and submitted September 6, 1979, reversed January 22, 1980

## WHEELER,
### *Respondent,*
### *v.*
## HUSTON, et al,
### *Petitioners.*

## (No. 21902, CA 10795, SC 26124)

605 P2d 1339

[467]

Edward H. Warren, Portland, argued the cause for petitioners. With him on the briefs were Lauren M. Underwood, and Acker, Underwood, Beers, Smith & Warren, Portland.

Robert L. Nash, Bend, argued the cause for respondent. With him on the brief was Panner, Johnson, Marceau, Karnopp & Kennedy, Bend.

PETERSON, J.

## PETERSON, J.

This is a personal injury negligence case in which the jury returned a verdict for the exact amount of special damages claimed. Following reinstruction by the trial court, the jury returned a verdict for a larger amount. Judgment was entered thereon. The defendants claim that the trial court erred in failing to receive the first verdict. We agree and reverse.

## THE FACTS

The plaintiff, a milkman, fell while making a delivery to the defendants, and sued for damages. The defendants denied responsibility for the fall, denied that the plaintiff sustained injury, and claimed that the plaintiff was also at fault.

The plaintiff prayed for general damages and for special damages of $9,120.25 (lost wages of $6,000 and medical expenses of $3,120.25). The defendants also disputed the correctness of the amount of lost wages claimed to have been sustained.

The jury returned a special verdict in the form customarily used in comparative fault cases. ORS 18.480. They found that the plaintiff was 45 percent at fault, that the defendants were 55 percent at fault, and that the plaintiff's "total money damages" were $9,120.25, the exact amount of the claimed special damages. The verdict form made no apportionment between special damages and general damages.[1]

---

[1] The verdict was similar to a "single-slot" verdict form. A single-slot verdict commonly is in a form such as:

"We find for the plaintiff and award damages of $_____ ."

A "double-slot" verdict commonly reads:

"We find for the plaintiff and award general damages of $_____ and special damages of $_____ ."

The form of the verdict used is within the discretion of the trial court. ORS 17.415. In comparative fault cases, upon the request of any party, "special questions" must be submitted to the jury. ORS 18.480.

[469]

The trial court asked the foreman of the jury if the verdict of $9,120.25 was intended to award only the special damages pertaining to medical care and lost wages and nothing for general damages, or if the jury intended to include some amount for general damages in the award. The foreman of the jury responded that the jury intended to award medical expenses and lost wages. Over defendants' objections that the first verdict should be received, the court then reinstructed the jury that under the law of the state of Oregon the jury could not award special damages without an award of general damages, and sent out the jury for further deliberations.[2]

After further deliberations, the jury returned with a verdict which again found defendants 55 percent at fault, plaintiff 45 percent at fault, and assessed plaintiff's "total money damages" in the sum of $20,000. Judgment was entered on this verdict.

The defendants appealed to the Court of Appeals, which affirmed per curiam,[3] citing *Mullins v. Rowe,* 222 Or 519, 353 P2d 861 (1960), and *State ex rel Nilsen v. The Shalimar, Inc.,* 28 Or App 61, 558 P2d 1251 (1977).

In *Eisele v. Rood,* 275 Or 461, 551 P2d 441 (1976), we held that a verdict for only special damages was valid if the "plaintiff's evidence of injury is merely subjective in nature" or if there is evidence that the plaintiff's injury "was not caused by the accident." 275 Or at 467. We granted review to reconsider the *Eisele* rule.

---

[2] The defendants also assign error, claiming that the trial judge, under Article VII, section 3 (Amended), of the Oregon Constitution, was prohibited from making such inquiry. We need not and do not decide this issue.

[3] 39 Or App 3, 593 P2d 527 (1979).

## THE DEVELOPMENT OF THE RULE IN OREGON

The issue presented in this case has been before this court at least 20 times in the past 27 years,[4] and continues to create confusion within the appellate courts, the trial courts, and among trial lawyers. A brief overview of the cases is in order.

*Hall v. Cornett,* 193 Or 634, 240 P2d 231 (1952), was a personal injury action resulting from an automobile collision. The total special damages claimed were $1,006.40. The jury returned a verdict in favor of the plaintiff for "One Dollar as General Damages, and the further sum of $1,006.40 Special Damages." The trial court refused to receive the verdict and instructed the jury that if it found for the plaintiff, it must award an amount which would reasonably compensate her for the damages sustained. After further deliberation the jury returned a verdict for "$300 as general damages and the further sum of $707.40 special damages." The trial court received the second verdict and entered judgment thereon, but thereafter set the judgment aside and granted a new trial. We affirmed, stating that the jury

> "* * * stubbornly adhered to what was apparently a compromise verdict between some who found liability and others who found none. Our statute provides that a judgment may be set aside and a new trial granted on the motion of the party aggrieved in the event of irregularity in the proceedings of the jury by which such party was prevented from having a fair trial, or for misconduct of the jury. * * *" 193 Or at 646-647.

*Mullins v. Rowe,* 222 Or 519, 353 P2d 861 is a 1960 case involving a claim for general and special damages on a cause of action arising out of an automobile accident. There was evidence that the plaintiff had incurred $332 for medical services, but there was evidence that all the bills were not chargeable to the

---

[4] A list of cases in which this issue has been presented to the Supreme Court and Court of Appeals is appended. *See also,* Annot., 20 ALR2d 276 (1951).

accident. The verdict was for the plaintiff in the sum of $332 general damages and "special damages in the sum of $ None." The trial court received the verdict and entered judgment thereon, but thereafter granted a new trial. This court reversed.

"It may well be true, as contended in the plaintiff's brief and argument, that the jury simply compromised the question of liability and entered a verdict for the doctor bills, but to speculate concerning the mental processes of juries is forbidden the courts under Oregon Constitution, Art VII, § 3. * * *" 222 Or at 522.

Justice Goodwin also observed:

"The fact that the amount of the general damages found by the jury and the amount of the doctor bills claimed by the plaintiff are the same lends some degree of cogency to the plaintiff's speculation concerning what may have been in the mind of the jury, but such speculation does not permit the court to set the verdict aside when there is no error of law in the record." 222 Or at 523-524.

Also in 1960, *Baden v. Sunset Fuel Co.,* 225 Or 116, 357 P2d 410, reached this court. *Baden* was an action at law for personal injuries allegedly sustained as a result of the defendant's negligence. The plaintiff testified that she incurred a doctor's bill of $155.50 and a wage loss of $300, making total special damages of $455.50. The jury returned a verdict for $100 general damages and $455.50 special damages. The trial court refused to accept the verdict and "advised the jury that the general damages awarded were nominal and inadequate and instructed the jury to return and deliberate again and either modify that verdict or return a verdict for the defendant." 225 Or at 118. The jury retired and thereafter returned a verdict awarding plaintiff $400 general damages and $155.50 special damages. This verdict was received and a judgment entered thereon. Thereafter, upon plaintiff's motion, the trial court set aside the judgment and granted a new trial.

[472]

On appeal, we reversed, holding that the original award of $100 general damages was more than nominal and that the first verdict should have been received. We further held that because the second verdict was in the same total amount as the first verdict, the plaintiff had not been prejudiced by the resubmission of the case to the jury, and ordered that judgment be entered on the first verdict.

*Sedillo v. City of Portland,* 234 Or 28, 380 P2d 115 (1963), involved a rear-end collision in which the plaintiff sought special damages of $537.85 plus general damages. The verdict form did not segregate special damages from general damages, and the jury returned a plaintiff's verdict in which there was inserted in the blank for the amount of damages "$537.85." The plaintiff objected to the verdict and the jury was again sent out to deliberate. Thereafter, the jury returned with the same verdict form with the "$537.85" crossed out and "$500" inserted. Under this amount was inserted the word "general." This verdict was received and judgment was entered thereon.

On plaintiff's appeal, this court affirmed. We held that the first verdict was proper, but that because the plaintiff was responsible for the trial court rejecting the first verdict, "he should not profit by its reinstatement." 234 Or at 34. In reaching this conclusion, we noted that "* * * there was an important question of whether or not much of plaintiff's medical expense was occasioned by the collision * * *." 234 Or at 33.

*Flansberg v. Paulson,* 239 Or 610, 399 P2d 356 (1965), also involved a claim for personal injuries allegedly sustained in a rear-end automobile collision. The plaintiff sought general damages of $10,000 and special damages of $315.65. The jury first returned a verdict for the plaintiff and assessed no general damages and special damages of $315.65. Following reinstruction, the jury retired again and returned a verdict assessing general damages of $315.65, with no special

damages. The trial court refused to accept the verdict and declared a mistrial. The defendant appealed.

We affirmed in an opinion written by Chief Justice McAllister, who stated:

"The line between the rule enunciated in *Hall v. Cornett,* supra, and the later rule of *Mullins v. Rowe,* supra, may be narrow, but it is discernible. * * *" 239 Or at 617.

Justice O'Connell dissented, saying:

"* * * The fact that juries commonly make such an award despite the existence of obvious elements of 'general' damages suggests, perhaps, that the rule forbidding such a practice (when it can be detected by the form of the verdict) ignores the realities of every-day life and should be re-examined.

"Nothing in the nature of things requires jurors or anyone else to conceive of personal injury damages in two forms, viz., general and special. The average juror apparently does not make this distinction but feels, rather, that his function is performed if he arrives at a figure which will compensate the plaintiff or punish the defendant (or accomplish that which jurors seek to accomplish by fixing an award)." (Footnote omitted.) 239 Or at 618-619.

Justice O'Connell reasoned that special damages no more flow from general damages than general damages flow from special damages—that both measure "a distinct type of invasion of the plaintiff's interest." 239 Or at 619. He also criticized the reasoning in earlier cases, saying that "if a verdict allowing special damages and no general damages is unacceptable, a verdict allowing general damages and no special damages should also be unacceptable." 239 Or at 620. Conversely, he argued:

"* * * If a verdict for general damages [in the exact amount of the claimed special damages] is good * * *, a verdict for special damages without general damages should also be good * * *." 239 Or at 620-621.

Finally, Justice O'Connell pointed out that, in a sense, the established rule created a "game of num-

bers"—that if the jury "makes the right move [i. e., calling the damages 'general damages'] the court can do nothing about it because in that event there is no way to detect how the jury reached its conclusion." He concluded:

"* * * It does not appear, therefore, that the rule we have adopted is worth its salt considering the additional load that it imposes upon the judicial machinery of this state in the form of retrying cases and reviewing them on appeal.

"It is time, I think, to face up to the practicalities of this situation and hold that if the jury is thoroughly instructed on the measure of plaintiff's damages, the verdict will not be disturbed for failure to attribute a dollar amount to the separate categories of general and special damages." 239 Or at 623.

*Saum v. Bonar,* 258 Or 532, 484 P2d 294 (1971), was also a rear-end automobile accident case in which the plaintiff claimed special damages of $4,443.33. However, the defendant had paid $4,093.33 of this amount prior to trial, leaving net specials of $350. The jury verdict for $1 in general damages and $350 in special damages was set aside by the trial court, and the defendant appealed. We reversed and ordered that the original verdict be reinstated, saying:

"To affirm the verdict of the jury in this case, however, it is not necessary to go to the extent of holding that whenever a jury has been 'thoroughly instructed' on the measure of plaintiff's damages its verdict will *never* be disturbed either for 'failure to attribute a dollar amount to the separate categories of general and special damages' or for failure to award any substantial general damages, while awarding special damages, as in this case. This is because in this case defendant both pleaded and offered evidence to support his denial that plaintiff suffered any general damages, with the result that there was an actual conflict of evidence on that issue, and the jury could have reasonably found from the record in this case either (1) that plaintiff had lied about his alleged pain and suffering and that he either did not suffer pain to an extent warranting

[475]

compensation or (2) that plaintiff had already been paid an excessive amount for alleged lost wages, so as to also compensate him sufficiently for any such pain and suffering." (Emphasis in original.) 258 Or at 539.

Justice Tongue concluded the majority opinion, saying:

"We hold, therefore, that under the particular facts of this case we cannot say that it was improper for the jury to return a verdict of $1 in general damages, while allowing recovery of $350 in special damages for the balance of plaintiff's medical expenses. Accordingly, we also hold that the rule of *Flansberg,* and other decisions to the same effect, has no application under these particular facts." (Footnote omitted.) 258 Or at 542.

In 1971, *Brannan v. Slemp,* 260 Or 336, 490 P2d 979, reached this court. Brannan claimed to have sustained personal injuries in a rear-end accident, including special damages of $5,553. The jury verdict was for no general damages and $5,553 special damages. The trial court denied the defendants' motion to accept the first verdict and reinstructed the jury, following which the jury returned a second verdict for $22,000 general damages and $5,553 special damages. The defendants appealed, claiming that the first verdict should have been received.

We were equally divided, and the trial court judgment was therefore affirmed. ORS 2.111(5). Justice Howell wrote the opinion for the three justices who favored affirmance:

"* * * While the facts present a close question, we believe that the first verdict for special damages only was improper in this case, and that the court correctly refused to receive it. The evidence disclosed that plaintiff sustained an injury from the accident and that he sustained some pain and suffering. * * *

"* * * * *.

"The plaintiff's medical testimony was not contested by the defendants * * * " 260 Or at 344.

Finally, in *Eisele v. Rood,* 275 Or 461, 551 P2d 441 (1976), we clearly enunciated a rule to the effect that whether a verdict in the amount of the claimed special damages was proper would be determined by the sufficiency of the evidence to prove, as a matter of law, that general damage resulted from the accident. *Eisele* was also an action for personal injuries allegedly received in a rear-end automobile accident. The verdict was for no general damages and $1200 special damages. The plaintiff appealed, contending that the trial court erred in accepting the verdict.

There was evidence that the plaintiff's symptoms were primarily subjective or non-existent. Justice Howell again wrote the opinion for the majority, and he stated the rule to be as follows:

"* * * As a general rule, a verdict for special damages without an allowance for general damages is improper. However, when the issue of general damages is controverted in the pleadings and the evidence on that point is in conflict, the jury may conclude that plaintiff did not actually suffer any general damages but did reasonably incur special damages for medical expenses and/or loss of wages. In cases in which plaintiff's evidence of injury is merely subjective in nature, the jury may choose to disbelieve plaintiff's testimony as well as any medical testimony which is based on plaintiff's subjective complaints and for which there is no independent, objective evidence. Similarly, if there is objective evidence of a substantial injury, but defendant's evidence indicates that this injury was not caused by the accident for which he is responsible, the jury can again find that plaintiff has not proved general damages. However, if there is uncontroverted, objective evidence that plaintiff sustained general damages as a result of the defendant's conduct, an award of special damages alone is improper." (Footnotes omitted.) 275 Or at 467.

Justice O'Connell by this time had apparently abandoned any hope of convincing the court that his

[477]

dissenting opinion in *Flansberg v. Paulson* should be the law, and he specially concurred, stating:

> "Having failed in my effort to convince the court of the advisability of repudiating the rule adopted in *Saum v. Bonar, supra,* I urge the legislature to enact a statute which will do so." 275 Or at 470.

## DISCUSSION

The rulings of this court have not gone without criticism. Justice O'Connell dissented in *Flansberg, supra,* and in other cases. Professor Frank R. Lacy has also urged that this court adopt a rule validating specials-only verdicts. Lacy, *Chief Justice O'Connell's Contributions to the Law of Civil Procedure,* 56 Or L Rev 191, 213 (1977). His rationale: "The departure from perfect justice in an occasional case seems a reasonable tradeoff for freedom from posttrial motions, appeals, and retrials." The solution proposed by Justice O'Connell and Professor Lacy has the virtues of ease of administration, certainty, and to some extent recognizes the power of a jury to afford "rough justice,"[5] but no court has gone so far as to validate all jury verdicts for only the specials.

We confess that this "verdict for the claimed specials" issue raises thorny problems, and our protracted labors for a satisfactory solution have not entirely solved the problem. In reconsidering the applicable rules and in considering other solutions incident to the decision in this case, we have examined opinions from other states and countries, including nineteenth century English reports. We have studied the historical bases for the distinctions between general damages and special damages. The rules set forth below may be criticized as well. Perhaps nothing short of a capitulation to judicial expediency and carte blanche approval of verdicts in the amount of the claimed specials will

---

[5] According to Roscoe Pound [as as quoted in L. Moore, The Jury, at v (1973)] "* * * jury lawlessness is the great corrective of law in its actual administration."

[478]

end the repeated appeals in this area. We have considered such a solution and reject it.

We are persuaded that the *Eisele* rule (as restated below) should be retained. However, in *Eisele* we did not consider the situation in which the amount of special damages incurred was in dispute. An unsegregated verdict in such a case for the exact amount of the claimed specials might well include general damages. We therefore restate the rule applicable to verdicts for only the amount of the claimed specials as follows:

1. If there is a question whether *any* general damages were sustained, the jury may conclude that the plaintiff suffered no general damages but did reasonably incur wage loss and/or medical expense. Such verdicts are valid and include cases in which (a) the plaintiff's evidence of injury is subjective, (b) there is evidence that the plaintiff's injuries for which general damages are claimed were not caused by the accident, and (c) the objective evidence of a substantial injury sustained by plaintiff is controverted by other competent evidence, or could be disbelieved by the trier of fact.[6]

2. Even in the case where the jury must award some general damages, if there is a substantial dispute as to the amount of the special damages to which the plaintiff is entitled, an unsegregated verdict in the exact amount of the claimed specials will be upheld. Such an award may reflect a decision by the jury not to award the total amount of the claimed special damages but rather to award part of the claimed specials and some general damages. The mere identity between the award and the specials claimed would not exclude a conclusion that the verdict included an award for general damages. For example, plaintiff might claim

---

[6] On the issue of whether a question is for the court to decide and not the jury, see *Rickard v. Ellis,* 230 Or 46, 51-55, 368 P2d 396 (1962); *Palmer v. Van Petten Lbr. Co.,* 265 Or 347, 349-351, 509 P2d 420 (1973); and *Rogers v. Hill,* 281 Or 491, 493-496, 576 P2d 328 (1978).

medical expenses and wage loss totalling $6,000. If the defendant produces evidence that some medical expenses were not due to the accident or that the wage claim was inflated, an unsegregated verdict for only the claimed specials could well include an award of general damages. Such a verdict would only be valid, however, if the amount of special damages in dispute was more than a nominal amount.[7]

One further aspect of this question requires discussion. Since the decisions in *Saum* and *Eisele,* it has been clear that the validity of a verdict in the amount of the claimed specials only is determined by the evidence.

In a jury trial, questions concerning the sufficiency of the evidence are normally addressed prior to the judge's instructions to the jury. This gives the trial judge the opportunity to rule on evidentiary matters prior to verdict, thus avoiding many post-verdict hassles as to evidentiary matters. For example, if a plaintiff alleges that a wrist was fractured in an accident, and if the evidence fails to establish a fractured wrist, the defendant's attorney should move to strike that allegation from the complaint prior to the jury deliberations. Absent such a motion, a verdict for the plaintiff is immune from attack on the ground that the trial court submitted an allegation of injury which was not proved.

Similarly, if the evidence in a personal injury case is such that reasonable people could not disagree that the defendant is legally liable for any injuries sustained by the plaintiff in an accident, the plaintiff should appropriately request that the jury be instructed that the defendant's liability has been established. In the absence of such a request, a verdict for the defendant is immune from attack by the plaintiff on the ground that the trial court failed to instruct the jury that the defendant's liability had been establish-

---

[7] *See Baden v. Sunset Fuel Co.,* 225 Or 116, 357 P2d 410 (1960).

ed and that the defendant was liable for all injuries resulting from the defendant's fault. There is no reason why the question of the plaintiff's right to recover general damages or uncontroverted special damages should be treated any differently. We hold, therefore, that if the plaintiff claims that the right to recover general damages has been established as a matter of law, and that the jury must therefore award some general damages if they find defendant liable, the plaintiff should request that an appropriate instruction be given to that effect. Such an instruction might read as follows:

"If you find that the plaintiff is entitled to recover, you must award some general damages to the plaintiff, pursuant to the following instructions * * *."

Or if the plaintiff claims that the right to recover special damages in a certain amount has been established as a matter of law, an appropriate request for an instruction should be made. Such a requested instruction might well include the following paragraph:

"If you find that the defendant is liable to the plaintiff, your verdict must include an award of special damages of (insert appropriate amount) for (insert claim, for example 'medical expenses' or 'lost wages.')"

If the plaintiff's attorney claims that the plaintiff has established, beyond question, the claim to general damages, per *Eisele* and this opinion, or the claim to a specific amount of special damages, per this opinion, but fails to bring these matters to the attention of the trial judge by appropriate motion or requested instruction, any objection to a verdict in the amount of only the claimed specials will be deemed waived.[8] This rule

---

[8] We take note of Uniform Instructions 30.02 and 30.03. The first sentence of 30.02 reads:

"If you find that plaintiff is entitled to recover, you will first determine the amount of general damages caused by the defendant."

The first sentence of 30.03 reads:

"If you have found that the plaintiff is entitled to general damages,
*(Continued on following page)*

(requiring timely request to the trial court) will apply to cases tried after the publication of this opinion in the advance sheets.

\* \* \* \* \*

Whether the plaintiff in the instant case sustained any general damages as a result of the fall was disputed, as was the amount of the claimed special damages.

The plaintiff claimed lost wages at the rate of $1,200 per month. The record does not support the claim that plaintiff averaged earnings of $1,200 per month.[9]

On the question of whether the plaintiff's complaints were due to an injury caused by the accident or were due to pre-existing back problems, the plaintiff's doctor, on direct examination, testified that the plaintiff's injuries were permanent, but the doctor was not asked if the injuries were caused by the accident. The doctor further testified, on direct examination, to a "dismal history" of problems with the plaintiff's back seven years before, of low back pain and that a back brace was required.

On cross-examination, the doctor testified that the plaintiff had degenerative lumbar disc disease, that the damage to the disc "could have been at the time of the injury or before," and that the decreased disc space "could have been two months before or seven years before." The defendant claimed (and argued to the jury) that the plaintiff's back problems were not caused by the fall.

---

*(Continued from previous page)*
you shall then determine the amount, if any, of the special damages caused by defendant."

We recommend the discontinuance of such language in all cases, except as set forth above in this opinion.

[9] Average monthly earnings per Exhibit 11 were: during 1975, $1,054.79; in the first six months of 1976, $1,055.59.

[482]

In determining, per *Eisele,* whether there is evidence from which the jury could find that the injury was not caused by the accident, we must look at the evidence in the light most favorable to the defendant. Beyond any question, the amount of the claimed special damages was strongly disputed. We believe that the jury could properly have found that the plaintiff's injuries were not caused by the accident.

Considering the entire record, we are persuaded that the initial verdict should have been received. We therefore reverse with instructions to the trial court to enter judgment in accordance with the first verdict returned.

## APPENDIX

Cases in which the Supreme Court has faced the issue at bar include:

*Hall v. Cornett,* 193 Or 634, 240 P2d 231 (1952); *Snyder v. Amermann, Jr.,* 194 Or 675, 243 P2d 1082 (1952); *Fischer v. Howard,* 201 Or 426, 271 P2d 1059 (1954); *Stein v. Handy,* 212 Or 225, 319 P2d 935 (1957); *Edmonds v. Erion* 221 Or 104, 350 P2d 700 (1960); *Mullins v. Rowe,* 222 Or 519, 353 P2d 861 (1960); *Locatelli v. Ramsey,* 223 Or 238, 354 P2d 317 (1960); *Baden v. Sunset Fuel Co.,* 225 Or 116, 357 P2d 410 (1960); *Sedillo v. City of Portland,* 234 Or 28, 380 P2d 115 (1963); *Flansberg v. Paulson,* 239 Or 610, 399 P2d 356 (1965); *Saum v. Bonar,* 258 Or 532, 484 P2d 294 (1971); *Brannan v. Slemp,* 260 Or 336, 490 P2d 979 (1971); *Null v. Siegrist,* 262 Or 264, 497 P2d 664 (1972); *Chopp v. Miller,* 264 Or 138, 504 P2d 106 (1972); *Moore v. Drennan,* 269 Or 189, 523 P2d 1250 (1974); *Beranek v. Mulcare,* 269 Or 324, 524 P2d 1214 (1974); *Skourtis v. Ellis,* 272 Or 149, 535 P2d 1367 (1975); *Eisele v. Rood,* 275 Or 461, 551 P2d 441 (1976); *Storey v. Madsen,* 276 Or 181, 554 P2d 500 (1976); *Kriner v. Weaver,* 276 Or 741, 556 P2d 652 (1976); *Davis v. Hinman,* 39 Or App 171, 591 P2d 417, rev allowed, 287 Or 1 (1979).

Court of Appeals cases on the same subject are:

*State ex rel Nilsen v. The Shalimar, Inc.,* 28 Or App 61, 558 P2d 1251 (1977); *Calvert v. Ourum,* 40 Or App 511, 595 P2d 1264 (1979).